CENTER FOR DISABILITY ACCESS
Russell Handy, Esq., SBN 195058
Dennis Price, Esq., SBN 279082
Isabel Rose Masanque, Esq., SBN 292673
8033 Linda Vista Road, Suite 200
San Diego, CA 92111
(858) 375-7385; (888) 422-5191 fax
IsabelM@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Scott Schutza**, | **Case:** 3:19-CV-00990-H-WVG |
| Plaintiff, | **Plaintiff's Motion for Summary Judgment** |
| v. | |
| **Costco Wholesale Corporation**, a Washington Corporation; and Does 1-10, | Date:    September 14, 2020<br>Time:    10:30 a.m.<br>Ctrm:    15A (15th Floor) |
| Defendants. | Hon. Judge Marilyn L. Huff |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................i

TABLE OF AUTHORITIES ...........................................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES ............................. 1

I.   PRELIMINARY STATEMENT ...................................................... 1

II.  RELEVANT FACTS ........................................................................ 1

III.  LEGAL STANDARD ....................................................................... 4

IV.  DEFENDANT VIOLATED THE ADA BY FAILING TO
PROVIDE AND MAINTAIN AN ACCESSIBLE COUNTER................. 5

  A.  Plaintiff is Disabled ..................................................... 7

  B.  Defendant Owns and Operates a Place of Public Accommodation
     7

  C.  The Store Had Barriers That Were Readily Removed .................. 8

  D.  The Barriers Are and Were Readily Achievable to Remove ....... 13

V.   DEFENDANT VIOLATED THE ADA BY FAILING TO MODIFY
ITS  POLICIES,  PRACTICES  AND  PROCEDURES  TO
ACCOMMODATE PLAINTIFF............................................................. 13

VI.   THE  LACK  OF  COMPLIANT  FACILITIES  IS  UNLAWFUL
UNDER CALIFORNIA LAW .................................................................. 15

VII.   REMEDIES.................................................................................. 16

  A.  Plaintiff Has Standing to Seek Injunctive Relief Under the ADA
     for Barriers He Personally Encountered ........................................... 16

  B.  Plaintiff is Entitled to Statutory Penalties Against Defendant
     Under the UCRA .............................................................................. 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

VIII.   CONCLUSION ........................................................................ 20

**TABLE OF AUTHORITIES**

**Cases**

*Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*
   603 F.3d 666 (9th Cir. 2010) ................................................................ 6

*Chapman v. Pier 1 Imports (U.S.) Inc.*
   631 F.3d 939 (9th Cir. 2011) ........................................................... 5, 8

*Civ. Rights Educ. and Enf't Ctr. v. Hosp. Properties Tr.*, 867 F.3d 1093,
   1096 (9th Cir. 2017) ........................................................................ 18

*Cullen v. Netflix, Inc.*,
   880 F.Supp.2d 1017 (N.D. Cal. 2012) .............................................. 15

*D'Lil v. Best Western Encina Lodge & Suites*,
   538 F.3d 1031 (9th Cir. 2008) .......................................................... 17

*Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 867
   (9th Cir. 2014) ................................................................................. 17

*Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075 (9th Cir. 2004)...... 12

*Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323 (11th Cir. 2013) . 18

*Independent Living Resources v. Oregon Arena Corp.*, 1 F.Supp.2d 1159,
   1172 (D.Or.1998) ............................................................................. 12

*Kalani v. Starbucks Corp.*, 81 F. Supp. 3d 876 (N.D. Cal. 2015) ............. 11

*Kohler v. Flava Enterprises, Inc.*, 826 F. Supp. 2d 1221, 1227-28 (S.D. Cal.
   2011)................................................................................................. 11

*Moeller v. Taco Bell Corp.*
    816 F.Supp.2d 831 (N.D. Cal. 2011) ................................... 6
*Molski v. M.J. Cable, Inc.,*
    481 F.3d 724 (9th Cir. 2007) .........................................15, 19
*Rush v. Denco Enterprises, Inc.,*
    857 F. Supp. 2d 969 (C.D. Cal. 2012) ................................... 8


**Statutes**
42 U.S.C. § 12102(2)(A) ........................................................... 7
42 U.S.C. § 12188(a) ............................................................... 7
42 U.S.C. §§ 12183(a)(2) ......................................................... 6
42 U.S.C. 12182(b)(2)(A)(ii) .................................................. 13
Cal. Civ. Code § 55.56(b) ....................................................... 19
Cal. Civ. Code § 55.56(e) ....................................................... 19
Civ. Code § 51 (f) ................................................................. 15


**Other Authorities**
28 C.F.R. § 36.211(a) ..........................................................10, 11
28 C.F.R. 36.304(a) ............................................................... 13
28 C.F.R., Part 36, Appendix C, section 36.211 ..................... 11
28 C.F.R., Pt. 1191, Appendix B § 227.3 .................................. 9
28 C.F.R., Pt. 1191, Appendix D § 904.4, 904.4.1 .................... 9
Department of Justice, Technical Assistance Manual on the American
    with Disabilities Act (BNA) §§ III-4.4100 (1991) .................. 8

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   PRELIMINARY STATEMENT

The Defendant's failure to make an accessible lowered counter available to Mr. Schutza on his visit to the Costco ("Store") resulted in discrimination against Mr. Schutza on the basis of his disability in violation of the Americans with Disabilities Act and Unruh Civil Rights Act. Plaintiff takes pride in accomplishing tasks by himself and was embarrassed and frustrated that he was forced to be served at the higher service counter, the top of which he could barely use and see. Plaintiff therefore seeks an order requiring Defendant to provide and maintain an accessible membership service counter at the Store for use by persons with disabilities. Mr. Schutza also seeks statutory penalties of $16,000--$4,000 for each of his personal encounters with the barriers. Plaintiff respectfully requests this Court grant his motion.

## II.   RELEVANT FACTS

Scott Schutza is a paraplegic who cannot walk and who uses a wheelchair for mobility.[1] The Costco location at issue is located at or about 101 Town Center Pkwy, Santee, California ("Store").[2] Costco is a business establishment and place of public accommodation.[3] Defendant Costco Wholesale Corporation is currently the owner of the real property and the owner and operator of the Store and was so in April 2018, September 2018 and May 2019.[4]

---

[1] SUF #1.
[2] SUF #2.
[3] SUF #3.
[4] SUF #4.

1    Mr. Schutza frequently visits Costco to shop. [5] On at least four of
2   his visits to the Store in 2018 and 2019, Mr. Schutza went to the
3   membership counter during his visit to seek assistance.[6] A membership
4   service counter is one of the facilities, privileges, and advantages offered
5   by Defendant to patrons of the Store.[7] The membership service counter at
6   the Store is over 40 inches high.[8]

7    During his April 2018 visit, when Mr. Schutza approached the
8   membership service counter for assistance, he immediately noticed that
9   the counter was going to be too high for him to use. Mr. Schutza is very
10  familiar with the lowered, 36-inch high counters that are provided for use
11  by persons with disabilities at other businesses. He uses the lowered
12  counters all of the time at other stores and restaurants that he has visited.
13  Based on his experiences with these lowered counters, he could
14  immediately tell that this membership service counter was too high. [9]

15   Mr. Schutza saw a lowered portion of the counter located at the far
16  end that was being used to serve customers making returns. He knew that
17  this counter was serving customers in line for returns because there was a
18  sign above that end of the counter that said "Merchandise Returns."[10]
19  When it was Mr. Schutza's turned to be helped, he was greeted by a
20  female employee behind the higher counter. He asked her if it was
21  possible for him to be helped at the lowered portion of the counter and

22

23

24

---

25  [5] SUF #5.
    [6] SUF #6.
26  [7] SUF #7.
    [8] SUF #8.
27  [9] SUF #9.
    [10] SUF #10.
28

Plaintiff's Motion for Summary Judgment          Case: 3:19-CV-00990-H-WVG

she responded that he could not be helped there.[11] Since the employee told him that he could not be helped at the lowered counter, Mr. Schutza asked her his question from the higher counter. She also gave him a piece of paper to write down some information and he had no choice but to reach up and write on the higher counter.[12]

Having to handle his transaction on the higher counter created difficulty and discomfort for Mr. Schutza. Handling his transactions at anywhere between 30 and 36 inches is ideal for him since he is sitting in a wheelchair. As the height of the surface is raised, he experiences an increase in difficulty because he is then forced to handle those transactions at chest level or higher, forcing his arms higher, which is what happened when he had to write on the higher surface during this visit. This experience was discomforting and frustrating.[13]

Mr. Schutza returned to Costco in September 2018 and needed to get help at the membership counter again. When he approached the membership service counter, he told the employee that during a previous visit, he was told that he could not be helped at the lowered counter. The employee apologized and confirmed that was correct, he could not be helped at the lowered counter.[14]

Even when Mr. Schutza does not need a surface to write or pay, he feels much more comfortable interacting with people at the lowered wheelchair counter where he does not have a higher counter in his face and at his eye level, blocking him from the person he is speaking with. The lowered counter makes the interaction more personal and makes

---

[11] SUF #11.
[12] SUF #12.
[13] SUF #13.
[14] SUF #14.

Plaintiff's Motion for Summary Judgment          Case: 3:19-CV-00990-H-WVG

him feel more valued as a customer. [15] Additionally, Mr. Schutza knows that the lowered counters are made for wheelchair users like him, so it is embarrassing to him to have to use a counter that is too high where he knows he does not have the same experience as other customers.[16] Being denied service at the lowered counter again during his second visit was frustrating and discomforting for Mr. Schutza.[17]

Mr. Schutza had to seek assistance at the lowered counter on two more subsequent occasions in May 2019. During these visits, he was again assisted at the higher counter. Having to use the higher counter was difficult and discomforting. But since he had already asked twice before about being helped at the lowered counter and was denied, he did not bother asking again during his visits in May 2019. [18]

### III.   LEGAL STANDARD

Pursuant to section 56 of the Federal Rules of Civil Procedure, a party can bring a motion for summary judgment where there is no genuine dispute as to any material fact. Motions for summary judgment are not "disfavored."[19] In the present case, there can be no genuine dispute over the facts of the case and those facts inform the court and the parties that it would be a waste of judicial resources for this case to proceed to trial. There is no genuine issue of material fact and this court should grant the Plaintiff's motion.

---

[15] SUF #15.

[16] SUF #16.

[17] SUF #17.

[18] SUF #18.

[19] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)

Plaintiff's Motion for Summary Judgment     Case: 3:19-CV-00990-H-WVG

## IV.   DEFENDANT VIOLATED THE ADA BY FAILING TO PROVIDE AND MAINTAIN AN ACCESSIBLE COUNTER

Under Title III of the Americans With Disabilities Act of 1990 ("ADA"), the general rule is that: "No individual shall be discriminated against on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."[20] The term "discrimination" can be misleading. The ADA applies not just to intentional discrimination but to thoughtlessness and indifference:

> Its passage was premised on Congress's finding that discrimination against the disabled is most often the product, not of invidious animus, but rather of thoughtlessness and indifference, of benign neglect, and of apathetic attitudes rather than affirmative animus. The concept of "discrimination" under the ADA does not extend only to obviously exclusionary conduct—such as a sign stating that persons with disabilities are unwelcome or an obstacle course leading to a store's entrance. Rather, the ADA proscribes more subtle forms of discrimination—such as difficult-to-navigate restrooms and hard-to-open doors—that interfere with disabled individuals' "full and equal enjoyment" of places of public accommodation. [21]

---

[20] 42 U.S.C. § 12182(a).

[21] *Chapman v. Pier 1 Imports* (U.S.) Inc., 631 F.3d 939, 944-45 (9th Cir. 2011) (internal quotes and citations removed for readability).

Plaintiff's Motion for Summary Judgment        Case: 3:19-CV-00990-H-WVG

To succeed on his Title III, ADA claim, "a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability."[22] "The third element—whether plaintiffs were denied public accommodations on the basis of disability—is met if there was a violation of applicable accessibility standards."[23] This is because discrimination is defined both as either a failure to ensure that alterations are "readily accessible to and useable by persons with disabilities" and, where there are no alterations, "a failure to remove architectural barriers…in existing facilities…where such removal is readily achievable."[24] Thus, the following is a simplified statement of the elements necessary for the plaintiff to prove discrimination under this section:

1. Plaintiff must be disabled.[25]
2. The defendant's facility must be a place of "public accommodation" and, therefore, governed by Title III of the ADA *Id.*;
3. The defendant must be a responsible party, i.e., owner, operator, lessor or lessee. *Id.*;
4. The defendant's facility must have either undergone an alteration that did not comply with the access standards or contain an easily removed barrier that the defendants failed to remove.[26] Plaintiff

---

[22] *Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*, 603 F.3d 666, 670 (9th Cir. 2010).
[23] *Moeller v. Taco Bell Corp.*, 816 F.Supp.2d 831, 847 (N.D. Cal. 2011) citing, *Chapman*, 631 F.3d at 945.
[24] 42 U.S.C. §§ 12183(a)(2); 12182(b)(2)(A)(iv).
[25] 42 U.S.C. § 12182(a);
[26] 42 U.S.C. §§ 12183(a)(2); 12182(b)(2)(A)(iv);

must have actually encountered this non-removed and unlawful barrier.[27]

As discussed below, Mr. Schutza's civil rights were violated because the Defendant failed to provide accessible facilities at the Store. Plaintiff will discuss each element, seriatim.

### A.    Plaintiff is Disabled

Mr. Schutza has severe mobility impairments. He cannot walk and he uses a wheelchair for mobility.[28] Thus, there can be little doubt that he fits the qualification under the Americans with Disabilities Act as a person with a disability.[29] Given Mr. Schutza's inability to walk, this is not a genuine issue.

### B.    Defendant Owns and Operates a Place of Public Accommodation

The Store is a public accommodation, which Defendant admits.[30] Further, Stores are specifically identified as places of public accommodation. See 42 U.S.C. § 12181(7)(E). The Defendant owns and operates this place of public accommodation.[31] The Defendants, therefore, have an obligation to comply with the anti-discrimination provisions of Title III of the Americans with Disabilities Act.

---

[27] 42 U.S.C. § 12188(a).
[28] SUF #1.
[29] 42 U.S.C. § 12102(2)(A) (defining a physical impairment substantially affecting a major life activity as qualifying as a disability).
[30] SUF #3.
[31] SUF #4.

Plaintiff's Motion for Summary Judgment        Case: 3:19-CV-00990-H-WVG

## C. The Store Had Barriers That Were Readily Removed

The ADA defines "discrimination" as a failure to remove architectural barriers where it is readily achievable to do so. 42 U.S.C. § 12182(b)(2)(A)(iv). The term "barrier" is not defined in the Act itself but is defined in the Technical Assistance Manual:

> III-4.4100: What is an architectural barrier? Architectural barriers are physical elements of a facility that impede access by people with disabilities. These barriers include more than obvious impediments such as steps and curbs that prevent access by people who use wheelchairs.[32]

Case law is more specific. "To determine if Plaintiff describes an 'architectural barrier' the Court must turn to the ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG"). If an element does not meet or exceed ADAAG standards, it is considered a barrier to access."[33] "Any element in a facility that does not meet or exceed the requirements set forth in the ADAAG is a barrier to access." (identifying this as the formal position of the Department of Justice).[34] These are "objective" and "precise" standards and "the difference between compliance and noncompliance" is "often a matter of inches."[35]

### 1. Defendant's failure to provide an accessible membership service counter

Under the 2010 Standards, where the approach to the sales or

---

[32] Department of Justice, Technical Assistance Manual on the American with Disabilities Act (BNA) §§ III-4.4100 (1991).
[33] *Rush v. Denco Enterprises, Inc.*, 857 F. Supp. 2d 969, 973 (C.D. Cal. 2012) (internal cites omitted).
[34] *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011)
[35] *Id.*

1  service counter is a parallel approach, such as in this case, there must be a
2  portion of the sales counter that is no higher than 36 inches above the
3  floor and 36 inches long that extends the same depth as the rest of the
4  sales or service counter top.[36] Importantly, the standards further require
5  that "at least one of *each type* of sales counter and service counter" have a
6  lowered portion that is accessible.[37] The 2010 Advisory provides some
7  guidance on this topic and gives the example of a facility with separate
8  order and pick up counters. In that example, it would not be sufficient for
9  the facility to only make the order counter accessible, but not the pick-up
10 counter. The Advisory explains that while "[o]ne continuous counter can
11 be used to provide different types of service...Both the order and pick-up
12 section of the counter must be accessible."[38]

13      Here, there is a service counter at the Store that is used to assist
14 customers with their membership. The membership service counter at
15 the Store—the counter where Mr. Schutza was helped—measures over 40
16 inches high.[39] Although there was a lowered portion on one section of the
17 counter, Defendant cannot avoid liability by pointing to that lowered
18 counter because that counter was being used only to assist customers
19 with merchandise returns. As noted above, although ""[o]ne continuous
20 counter can be used to provide different types of service," there must be a
21 lowered counter offered for each type of service.[40]  Therefore, Costco was
22

23  [36] 28 C.F.R., Pt. 1191, Appendix D § 904.4, 904.4.1.
24  [37] 28 C.F.R., Pt. 1191, Appendix B § 227.3.
25  [38] 2010 ADA Standards for Accessible Design, Advisory 227.3 Counters.
    Available at:
26  https://www.ada.gov/regs2010/2010ADAStandards/2010ADAStandards.pd
    f
27  [39] SUF #8.
28  [40] 28 C.F.R., Pt. 1191, Appendix B § 227.3; 2010 ADA Standards for
    Accessible Design, Advisory 227.3 Counters. Available at:

Plaintiff's Motion for Summary Judgment      Case: 3:19-CV-00990-H-WVG

required to provide a lowered, accessible portion of the membership service counter for use by persons with disabilities.

For the same reasons, Defendant also cannot avoid liability by claiming that both services were available at the lowered counter. As Mr. Schutza explained, on two separate occasions he asked whether he could be helped at that lowered counter and was told by two different Costco employees on each occasion that he could not.[41] There is no dispute that there was no lowered counter available for disabled customers to use when seeking assistance with their membership.

Defendant's failure to provide an accessible membership service counter is a violation of the ADA.

### 2.    *Defendant's failure to maintain an accessible membership service counter*

The ADA not only requires that businesses provide accessible facilities, i.e. facilities that physically comply with the Access Standards, but they have an ongoing duty to ensure that those accessible features remain ready to be used by persons with disabilities: "A public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be readily achievable to and usable by persons with disabilities . . .." 28 C.F.R. § 36.211(a). The Department of Justice explains the purpose of this Regulation:

> Section 36.211 Maintenance of Accessible Features
>
> Section 36.211 provides that a public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the

---

https://www.ada.gov/regs2010/2010ADAStandards/2010ADAStandards.pdf

[41] SUF #11, 14.

Act or this part. The Act requires that, to the maximum extent feasible, facilities must be accessible to, and usable by, individuals with disabilities. This section recognizes that it is not sufficient to provide features such as accessible routes, elevators or ramps, **if those features are not maintained in a manner that enables individuals with disabilities to use them.**

28 C.F.R., Part 36, Appendix C, § 36.211 (emphasis added).

Courts consistently cite to this regulation when holding that a public accommodation is required to maintain the usability of the accessible features of its facility:

- "Section 36.211(a) requires that once a facility is brought into compliance with the relevant standards, accessibility be maintained so that persons with disabilities may continue to access and use the facility."[42]
- "The regulations implementing ADA Title III . . . require that a public accommodation maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the Act or this part. 28 C.F.R. § 36.211(a)."[43]
- "A violation of the ADA can occur where a defendant's business is in compliance with ADAAG requirements, but that defendant does not maintain its compliant features in a useable manner."[44]

---

[42] *Kalani v. Starbucks Corp.*, 81 F. Supp. 3d 876, 885 (N.D. Cal. 2015).
[43] *Chapman v. Pier 1 Imports (U.S.) Inc.*, 779 F.3d 1001, 1006 (9th Cir. 2015) (cites and quotes omitted).
[44] *Kohler v. Flava Enterprises, Inc.*, 826 F. Supp. 2d 1221, 1227-28 (S.D. Cal. 2011).

Plaintiff's Motion for Summary Judgment          Case: 3:19-CV-00990-H-WVG

1       In other words, the ADA concerns itself with the use of facilities

2   just as much as the design of facilities. The Ninth Circuit discussed the

3   distinction in *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075 (9th Cir.

4   2004). In *Fortyune*, a wheelchair user was unable to use a wheelchair

5   seating area (and its companion seat) because a non-disabled person was

6   sitting in the spot and AMC refused to make the person move.[45] Although

7   AMC argued that it was in compliance with the ADA Standards (also

8   called "ADAAG") because it had the required accessible seating, the

9   Ninth Circuit noted "in cases such as Fortyune's, which concern a public

10  accommodation's policy regarding the use of that design (e.g., the use

11  and availability of a companion seat), the provisions of the ADAAG are

12  not controlling."[46]

13      Here, even assuming that the lowered counter was also intended to

14  be used as a membership service counter, Defendant still violated the

15  ADA by failing to maintain the usability of the lowered counter for that

16  purpose. Defendant does not fulfill its ADA obligations simply because

17  that lowered counter exists if it is not also maintained in a usable manner.

18  Defendant failed to make the lowered counter available to Mr. Schutza

19  during four of his visits to the Store because it was designated for use only

20  for persons making merchandise returns.[47] And, on two of those visits,

21  Mr. Schutza's request to be helped at the lowered counter was explicitly

22  denied by Costco.[48]

23

24  _____

[45] *Id.* at 1078-79.

25  [46] *Id.* at 1085, citing *Independent Living Resources v. Oregon Arena Corp.*, 1

26  F.Supp.2d 1159, 1172 (D.Or.1998) (for the proposition that it is "not

27  surprising" that the ADAAG would be silent when it comes to an "operational"
    issue rather than a design one).

28  [47] SUF #10.

    [48] SUF #11, 14.

---

Plaintiff's Motion for Summary Judgment    Case: 3:19-CV-00990-H-WVG

1
2
Defendant's failure to maintain the usability of an accessible membership service counter is a violation of the ADA.

3
4
**D.     The Barriers Are and Were Readily Achievable to Remove**

5
6
7
8
9
10
Under the ADA, "readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense.[49] Notably, Defendant is not raising a readily achievable defense in this case[50] Thus, there is no dispute that removal of the barriers is readily achievable.

11
12
13
## V.   DEFENDANT VIOLATED THE ADA BY FAILING TO MODIFY ITS POLICIES, PRACTICES AND PROCEDURES TO ACCOMMODATE PLAINTIFF

14
15
16
17
18
19
20
21
22
23
24
25
26
In addition to their failure to provide and maintain physically accessible facilities, Defendant also violated the ADA by failing to modify its policies, practices and procedures to accommodate Mr. Schutza's request to be helped at the lowered counter. Under the ADA, discrimination is also found where a public accommodation fails to "make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations."[51] Thus, as public accommodation violates the ADA by failing to modify a policy,

27
28
[49] 28 C.F.R. 36.304(a).
[50] SUF #21.
[51] 42 U.S.C. 12182(b)(2)(A)(ii).

Plaintiff's Motion for Summary Judgment          Case: 3:19-CV-00990-H-WVG

1   practice or procedure where (1) the requested modification is necessary;
2   (2) the requested modification is reasonable; and (3) the requested
3   modification does not fundamentally alter the nature of the services
4   provided.[52]

5       All of the above elements are met here. On two separate occasions,
6   Mr. Schutza requested that he be helped at the lowered counter. In doing
7   so, he was effectively requesting Defendant to modify its policy of using
8   the lowered counter for returns to allow him to be assisted there for his
9   membership question.

10      First, the requested modification was necessary—at the least—
11  because Defendant was required under the ADA to provide a lowered
12  counter, but there was no lowered portion of the membership service
13  counter where Mr. Schutza could be helped. Moreover, As explained
14  above, because he is in a wheelchair, Mr. Schutza needs a lowered
15  counter to comfortably conduct his transaction. Handling his
16  transactions at anywhere between 30 and 36 inches is ideal for him since
17  he is sitting in a wheelchair. As the height of the surface is raised, he
18  experiences an increase in difficulty because he is then forced to handle
19  those transactions at chest level or higher, forcing his arms higher, which
20  is what happened when he had to write on the higher surface during this
21  visit. This experience was discomforting and frustrating.[53] Even when
22  Mr. Schutza does not need a surface to write or pay, he feels much more
23  comfortable interacting with people at the lowered wheelchair counter
24  where he does not have a higher counter in his face and at his eye level,
25  blocking him from the person he is speaking with. The lowered counter
26  makes the interaction more personal and makes him feel more valued as

27  
28  [52] *Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d 1075, 1082-84.
    [53] SUF #13.

a customer.[54]

Second, the requested modification was reasonable. Granting Mr. Schutza's request would not have required Costco to make any structural changes. The employee would have only needed to walk to the lowered counter and help Mr. Schutza there.

Finally, allowing Mr. Schutza to be helped at the lowered counter even though he was not making a return does not fundamentally alter the nature of the services provided by Costco. Costco already provides a counter where customers can be assisted with questions relating to their membership. That is all Mr. Schutza was trying to do here and it was already a service being offered to other customers.

Defendant's failure to modify its policies, practices and procedures to reasonably accommodate Mr. Schutza is a violation of the ADA.

## VI.   THE LACK OF COMPLIANT FACILITIES IS UNLAWFUL UNDER CALIFORNIA LAW

The Unruh Civil Rights Act provides that "a violation of the right of any individual under the Americans with Disabilities Act of 1990 shall also constitute a violation of this section." Civ. Code § 51 (f). "A violation of the ADA is, by statutory definition, a violation of both the Unruh Act and the DPA."[55] "Because the Unruh Act is coextensive with the ADA and allows for monetary damages, litigants in federal court in California often pair state Unruh Act claims with federal ADA claims."[56]

As discussed above under section "IV", defendant violated the ADA. Thus, there has been a per-se violation of Unruh.

---

[54] SUF #15.

[55] *Cullen v. Netflix, Inc.*, 880 F.Supp.2d 1017, 1023 (N.D. Cal. 2012).

[56] *Molski*, 481 F.3d at 731.

1
2
## VII.  REMEDIES

3      Plaintiff seeks an injunction under the ADA requiring the
4  defendant to provide and maintain an accessible membership service
5  counter. Plaintiff also seeks a separate statutory penalty against the
6  Defendant in the amount of $16,000 ($4,000 for each of his personal
7  encounters with the inaccessible membership service counter).

8
### A.     Plaintiff Has Standing to Seek Injunctive Relief Under the ADA for Barriers He Personally Encountered
9

10     Mr. Schutza has standing to seek this injunction with respect to the
11  barriers he personally encountered. In *Chapman v. Pier 1 Imports*,[57] the
12  Ninth Circuit held that an ADA plaintiff: (1) "must demonstrate that he
13  has suffered an injury-in-fact," and (to obtain injunctive relief), (2)
14  demonstrate a "real and immediate threat of repeated injury" in the
15  future.[58]

16     Under *Chapman*, an ADA plaintiff suffers an injury-in-fact when
17  he "encounters an accessibility barrier [that] interferes with the plaintiff's
18  full and equal enjoyment of the facility."[59] As referenced above, the
19  Ninth Circuit has held that the phrase "full and equal" is a term of art,
20  having specific reference to the Americans with Disabilities Act
21  Accessibility Guidelines ("ADAAG").[60] Thus, the *Chapman* court held
22  that "the ADAAG establishes the technical standards required for 'full
23  and equal enjoyment'" and that "if a barrier violating these standards
24
25
26

_____

[57] *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939 (9th Cir. 2011).
[58] *Chapman,* supra, 631 F.3d at 946.
[59] *Id.* at 947.
[60] *Id.*

relates to a plaintiff's disability, it **will** impair the plaintiff's full and equal access" and "constitutes 'discrimination' under the ADA."[61]

Here, Mr. Schutza personally encountered the non-compliant counter during his visit and the lack of accessible parking relates to his disability. As explained above, Mr. Schutza uses a wheelchair for mobility and therefore needs a lowered counter to comfortably conduct his transaction.[62] Thus, there can be no dispute that the plaintiff suffered an injury in fact.

Second, a plaintiff must establish that there is ongoing injury or a real likelihood of future injury.[63] It is axiomatic that if there is no ongoing or likely future injury, then a plaintiff has no standing for injunctive relief. "An ADA plaintiff establishes such a real and immediate threat if he intends to return to a noncompliant place of public accommodation where he will likely suffer repeated injury."[64] Additionally, the Ninth Circuit has "found actual or imminent injury sufficient to establish standing where a plaintiff demonstrates an intent to return to the geographic area where the accommodation is located and a desire to visit the accommodation if it were made accessible."[65]

Mr. Schutza currently lives in Santee, California and this Costco location is the one most conveniently located to his home. He has been to this Costco on dozens of occasions in the past two years and he will return on a regular and ongoing basis to shop. Mr. Schutza knows that he will also regularly need assistance at the membership service counter to ask

---

[61] *Id.* (emphasis added).
[62] SUF #13, 15
[63] *Chapman*, supra, 631 F.3d at 946-47.
[64] *Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 867 (9th Cir. 2014).
[65] *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1037 (9th Cir. 2008).

questions about his membership, such as inquiring about his rewards balance. When he does, he would like the ability to be helped at the lowered counter.[66]

Finally, the Ninth Circuit has now held that ADA "testers"—folks actively looking for non-complying businesses—have full standing. In *Civ. Rights Educ.*, the Ninth Circuit had to grapple with the question of "whether a plaintiff has constitutional standing where her only motivation for visiting a facility is to test it for ADA compliance."[67] After a thorough analysis of the various circuits that have found that ADA plaintiffs have "tester" standing, the Ninth Circuit found "as a matter of first impression, a plaintiff suing under Title III of the ADA can claim tester standing; plaintiffs' status as testers, rather than bona fide hotel patrons, [does] not deprive them of standing."[68] And the reason is simple: "motivation is irrelevant to the question of standing under Title III of the ADA."[69]

Here, Mr. Schutza explains that he is an active ADA litigator, therefore he will also return to the Store to assess it for compliance with disability access laws once it has been represented to him that the Store is now allegedly compliant.[70] And the fact that Mr. Schutza has an extensive litigation history and is a veteran tester supports his claim that he will return. Aside from the intent to return to the Costco to shop, Mr. Schutza has an important *litigation* reason to return: to have standing. This is an entirely appropriate motivation.

---

[66] SUF #19.

[67] *Civ. Rights Educ. and Enf't Ctr. v. Hosp. Properties Tr.,* 867 F.3d 1093, 1096 (9th Cir. 2017).

[68] *Id.* at 1093.

[69] *Id.* at 1102; see also *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323 (11th Cir. 2013).

[70] SUF #20.

Therefore, Plaintiff has standing to seek an injunction requiring Defendants to provide and maintain an accessible membership service counter at the Store.

### B.   Plaintiff is Entitled to Statutory Penalties Against Defendant Under the UCRA

Statutory damages can be recovered for a violation of the Unruh Civil Rights Act "if the violation denied the plaintiff full and equal access to the place of public accommodation on a particular occasion." A denial of full and equal access takes place where a plaintiff "personally encountered" the violation and it resulted in "difficulty, discomfort or embarrassment."[71] Under the Civil Code, the plaintiff is entitled to recover a statutory penalty for "each offense" (Cal. Civ. Code § 52(a)) which has been defined as "each particular occasion that the plaintiff was denied full and equal access..."[72]

Plaintiff personally encountered the service counter violations on at least four occasions in April 2018, September 2018 and May 2019 and they caused him difficulty, discomfort and frustration.[73] Thus, he seeks a separate penalty for each occasion on which he was denied full and equal access. There are no genuine issues in dispute regarding Plaintiff's entitlement to the statutory award under the Unruh Civil Rights Act for his encounters with the barrier. "The litigant need not prove he suffered actual damages to recover the independent statutory damages of $4,000."[74]

---

[71] Cal. Civ. § 55.56(b).
[72] Cal. Civ. Code § 55.56(e).
[73] SUF #13, 17, 18.
[74] *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court grant his motion.


Dated: July 24, 2020                    CENTER FOR DISABILITY ACCESS


                                        By: */s/ Isabel Rose Masanque*
                                            Isabel Rose Masanque
                                            Attorneys for Plaintiff

---

Plaintiff's Motion for Summary Judgment        Case: 3:19-CV-00990-H-WVG