1

2

3

4

5

6

7

8 UNITED STATES DISTRICT COURT

9 SOUTHERN DISTRICT OF CALIFORNIA

10

11 SCOTT SCHUTZA,

12             Plaintiff,

13        v.

14 COSTCO WHOLESALE
CORPORATION, a Washington
Corporation; and DOES 1-10,

15

16             Defendants.

Case No.: 19-cv-00990-DMS-WVG

**ORDER (1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND (2) DENYING DEFENDANT COSTCO WHOLESALE CORPORATION'S MOTION FOR SUMMARY JUDGMENT**

17

18        This case comes before the Court on Plaintiff Scott Schutza's motion for

19 summary judgment and Defendant Costco Wholesale Corporation's motion for

20 summary judgment.  For the following reasons, both motions are denied.

21                                    **I.**

22                            **BACKGROUND**

23        Plaintiff is a paraplegic who uses a wheelchair for mobility.  (Schutza Decl.

24 ¶ 2, ECF No. 37-3.)   Defendant Costco Wholesale Corporation ("Costco" or

25 "Defendant") operates warehouse membership clubs which sell goods to its

26 members.  (Decl. of Frank Salas in Supp. of Def.'s Mot. ¶ 2 ("First Salas Decl."),

27 ECF No. 36-4.)  Defendant owns and operates a Costco location at 101 Town Center

28 Parkway, Santee, California ("the Store").  (Def.'s Resp. to Reqs. for Admis. ¶¶ 5–

1   8, ECF No. 37-6.)  Plaintiff alleges that on at least four occasions in 2018 and 2019,

2   he visited the Store and sought assistance at the membership service counter, but the

3   counter was too high for him to use, and he was denied access to a lowered portion

4   of the counter.  Specifically, Plaintiff alleges that on two separate visits, in April

5   2018 and September 2018, Plaintiff approached the membership counter for

6   assistance and was told by a Store employee on each occasion that he could not be

7   helped at the lowered portion of the counter. (Schutza Decl. ¶¶ 6–8, 11.)  As a result,

8   Plaintiff suffered discomfort and embarrassment from having to use a counter that

9   was too high.  (*Id.* ¶¶ 10, 12–14.)  Plaintiff visited the Store on two more occasions

10  in May 2019.  (*Id.* ¶ 15.)  On those visits, he did not ask whether he could be helped

11  at the lowered counter, and was assisted at the higher counter, which he again found

12  discomforting.  (*Id.*)

13          On May 27, 2019, Plaintiff filed a complaint against Defendant Costco,

14  alleging claims for: (1) violation of the American with Disabilities Act of 1990

15  ("ADA"), 42 U.S.C. § 12101, *et seq.*; and (2) violation of the California Unruh Civil

16  Rights Act, California Civil Code §§ 51–53.  (Compl., ECF No. 1.)  On June 28,

17  2020, Costco filed an answer.  (ECF No. 3.)  On July 24, 2020, the parties filed

18  cross-motions for summary judgment.

## II.

## LEGAL STANDARD

21          Summary judgment is appropriate if there is "no genuine dispute as to any

22  material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

23  P. 56(a).  The moving party has the initial burden of demonstrating that summary

24  judgment is proper. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  The

25  moving party must identify the pleadings, depositions, affidavits, or other evidence

26  that it "believes demonstrates the absence of a genuine issue of material fact."

27  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "A material issue of fact is one

28  that affects the outcome of the litigation and requires a trial to resolve the parties'

1    differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th

2    Cir. 1982).

3         The burden then shifts to the opposing party to show that summary judgment

4    is not appropriate. *Celotex*, 477 U.S. at 324. The opposing party's evidence is to be

5    believed, and all justifiable inferences are to be drawn in its favor. *Anderson v.*

6    *Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, to avoid summary

7    judgment, the opposing party cannot rest solely on conclusory allegations. *Berg v.*

8    *Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Instead, it must designate specific

9    facts showing there is a genuine issue for trial. *Id.*; *see also Butler v. San Diego*

10   *Dist. Attorney's Off.*, 370 F.3d 956, 958 (9th Cir. 2004) (stating if defendant

11   produces enough evidence to require plaintiff to go beyond pleadings, plaintiff must

12   counter by producing evidence of his own).

13        More than a "metaphysical doubt" is required to establish a genuine issue of

14   material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574,

15   586 (1986). The opposing party must show that evidence in the record could lead a

16   rational trier of fact to find in its favor. *Id.* at 587. "[M]ere disagreement or the bald

17   assertion that a genuine issue of material fact exists no longer precludes the use

18   of summary judgment." *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989)

19   (citing *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818

20   F.2d 1466, 1468 (9th Cir. 1987)). "Credibility determinations, the weighing of the

21   evidence, and the drawing of legitimate inferences are jury functions, not those of a

22   judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*,

23   477 U.S. at 255.

24        "[W]hen parties submit cross-motions for summary judgment, each motion

25   must be considered on its merits." *Fair Hous. Council of Riverside Cnty., Inc. v.*

26   *Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal citation, alteration, and

27   quotation marks omitted). The court must consider the evidence identified and

28   submitted in support of both motions, and in opposition to both motions, before

1  ruling on each of them.  *Id.* at 1134.

2  ### III.

3  ### DISCUSSION

4  The parties have filed cross-motions for summary judgment on Plaintiff's

5  ADA claim and Unruh Act claim.  In response to Plaintiff's motion, Defendant also

6  raises evidentiary objections to the Declaration of Jerome Hernandez and attached

7  photographs and requests this evidence be stricken.

8  **A. Hernandez Declaration**

9  In support of his motion, Plaintiff submits the Declaration of Jerome

10  Hernandez and several photographs taken by Hernandez.  (ECF Nos. 37-5, 37-6.)

11  Defendant argues that this evidence should be stricken under Rule 37(c) because

12  Plaintiff failed to disclose Hernandez as a potential witness during discovery.

13  "If a party fails to provide information or identify a witness as required by

14  Rule 26(a) or (e), the party is not allowed to use that information or witness to supply

15  evidence on a motion, at a hearing, or at a trial, unless the failure was substantially

16  justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  Here, the Magistrate Judge

17  ordered fact discovery to be completed on or before April 23, 2020, and expert

18  witness discovery to be completed on or before June 25, 2020.  (ECF No. 15, ¶ 6.)

19  Hernandez conducted his inspection of the service counter on July 24, 2020, the

20  same day the parties filed their motions for summary judgment.  (Hernandez Decl.

21  ¶ 2, ECF No. 37-5.)

22  Defendant argues that it was prejudiced by Plaintiff's failure to disclose

23  Hernandez as a witness because it was not able to depose Hernandez regarding his

24  observations and measurements and whether there were post-pandemic changes to

25  the Store that impacted his investigation.  Plaintiff contends that he complied with

26  Rule 26's obligation to supplement initial disclosures in a timely manner, because

27  he served a supplemental disclosure identifying Hernandez as a witness immediately

28  after Hernandez's investigation.  Further, Plaintiff contends that Defendant is not

1  prejudiced because Defendant has had "unfettered access" to the Store throughout

2  the litigation and could have taken its own measurements to dispute Plaintiff's

3  allegations.  (Pl.'s Reply to Def.'s Mot. 3, ECF No. 43.)

4  Defendant relies on *Johnson v. Kriplani*, No. Civ. 2:06-CV-02054 JAM GGH,

5  2008 U.S. Dist. LEXIS 51908 (E.D. Cal. July 2, 2008), in which the court struck

6  declarations and exhibits submitted after the close of discovery.  However, in that

7  case, the plaintiff did not respond in opposition to the defendant's motion to strike,

8  and thus did not demonstrate the failure to disclose was harmless or substantially

9  justified.  In contrast, in *Kalani v. Starbucks Corp.*, 81 F. Supp. 3d 876, 883–84

10  (N.D. Cal. 2015), *aff'd sub nom. Kalani v. Starbucks Coffee Co.*, 698 F. App'x 883

11  (9th Cir. 2017), the court found no harm to the defendant where a witness's site

12  inspection after the close of discovery was limited in scope, corresponding to

13  previously identified barriers.

14  Here, as in *Kalani*, Hernandez inspected a previously identified barrier—the

15  membership service counter—that Plaintiff alleges he encountered on his visits to

16  the Store.  *See also Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039 n.2 (9th Cir. 2008)

17  (noting district court's denial of motion to strike site inspection after deadline, which

18  found "[t]o the extent that [the expert] merely inspected those barriers that [Plaintiff]

19  encountered or knew about as a result of his visits to the store, ... [Defendant] was

20  not harmed by these visits.").  The Court further agrees with Plaintiff that Defendant

21  could have taken its own measurements or photographs of the Store at any point, and

22  Defendant was on notice that such information may be relevant given Plaintiff's

23  allegations in the Complaint.

24  Accordingly, the Court declines to strike the Hernandez Declaration and

25  attached photographs under Rule 37(c).

26  **B. ADA Claim**

27  Plaintiff's first claim alleges that Defendant violated the ADA by failing to

28  make a lowered counter at the Store available to him, resulting in discrimination on

1   the basis of disability.

2        Title III of the ADA prohibits discrimination by public accommodations. 42

3   U.S.C. § 12182(a).  To prevail on a claim for discrimination under Title III of the

4   ADA, Plaintiff must show (1) he is disabled under the definitions provided by the

5   ADA, (2) Defendant is "a private entity that owns, leases, or operates a place of

6   public accommodation," and (3) Plaintiff "was denied public accommodations ...

7   because of [his] disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir.

8   2007).

9        Here, neither party disputes that Plaintiff, as a paraplegic who uses a

10  wheelchair for mobility, is disabled within the meaning of the ADA. (*See* Def.'s

11  Resp. to Pl.'s Statement of Uncontroverted Facts at 1, ECF No. 39-5.)  Nor do they

12  dispute that Defendant operates the Store, which is a place of public accommodation.

13  (*See id.* at 2.)    At issue is the third element—whether Plaintiff suffered

14  discrimination because of his disability.

15       Plaintiff alleges three theories of discrimination under the ADA: (1) the

16  Store's membership service counter is an architectural barrier because it is over 40

17  inches high and there is no lowered portion available for membership services in

18  violation of the ADA Accessibility Guidelines ("ADAAG"); (2) Defendant failed to

19  maintain the lowered counter in a usable manner that was accessible to people with

20  disabilities; and (3) Defendant failed to make necessary, reasonable modifications to

21  its policies, practices, or procedures to accommodate him.  Plaintiff argues there is

22  no genuine dispute as to any material fact.  Defendant contends it is entitled to

23  summary judgment because (1) there is no triable issue of fact as to architectural

24  barriers or a violation of the ADAAG, and (2) Plaintiff has no evidence he requested

25  modification of any alleged policy relating to the use of the lowered counter.

26       1.  Architectural Barrier

27       Plaintiff contends that there was no ADA-compliant membership service

28  counter available to him because the main portion of the counter is too high and he

1   was denied use of the lowered portion.  Defendant argues Plaintiff cannot establish

2   an ADA claim because he provides no evidence that the service counter is non-

3   compliant with ADA standards.

4          Discrimination "on the basis of disability includes a failure to remove

5   architectural barriers where such removal is readily achievable." *Doran v. 7-Eleven,*

6   *Inc.*, 524 F. 3d 1034, 1043 (9th Cir. 2008) (quoting 42 U.S.C. § 12182); *see Hubbard*

7   *v. Rite Aid Corp.*, 433 F. Supp. 2d 1150, 1158 (S.D. Cal. 2006).  If a physical element

8   of a place of public accommodation does not meet or exceed the ADAAG, codified

9   at 36 C.F.R. Pt. 1191, it is an architectural barrier under the ADA.  *See* 28 C.F.R. §

10  36.406(a); 28 C.F.R. Pt. 36, App. A; *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631

11  F.3d 939, 945 (9th Cir. 2011) (en banc).  A plaintiff can establish discrimination by

12  showing a violation of applicable accessibility standards.  *See Chapman*, 631 F.3d

13  at 945.

14          *i. Height of the Membership Counter*

15          The parties do not dispute that the Store's membership counter had a lowered

16  portion, nor that the lowered portion was an ADA-compliant height.  (*See* Def.'s

17  Resp. to Pl.'s Mot. 15, ECF No. 39; Pl.'s Opp'n to Def.'s Mot. 9, ECF No. 40.)

18  Rather, they dispute whether the height of the main portion of the counter is ADA-

19  compliant.

20          For a service counter to comply with ADA standards, there must be a portion

21  of the counter at least 36 inches long and no higher than 36 inches above the floor

22  that extends the same depth as the rest of the service counter.  36 C.F.R. Pt. 1191

23  App. D § 904.4, 904.4.1.

24          Plaintiff's investigator found the main portion of the service counter to be 41

25  inches high. (Hernandez Decl. ¶ 4.)  Further, Plaintiff's own observations regarding

26  the height of the counter during his visits to the Store are proper evidence in support

27  of his ADA claim.  The Ninth Circuit has explicitly held that a plaintiff may prevail

28  on  an ADA claim  using  only  evidence  based  on  personal  knowledge  and

1   observation.  *Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1046 (9th Cir. 2013).

2   Plaintiff states he is familiar with the lowered, 36-inch-high counters which are

3   typically provided for use by individuals with disabilities, and that on his April 2018

4   visit to the Store, he immediately noticed the membership service counter was too

5   high for him to use.  (Schutza Decl. ¶ 6.)  Plaintiff may rely on such observations in

6   his motion for summary judgment.  *See, e.g.*, *Kohler v. Presidio Int'l, Inc.*, No.

7   CV104680PSGPJWX, 2016 WL 3766470, at *4 (C.D. Cal. Apr. 19, 2016) (finding

8   genuine dispute of fact, considering testimony in the light most favorable to plaintiff,

9   where plaintiff testified he believed counters to be non-compliant height based on

10  personal observations).

11        Moreover, Defendant has not provided any evidence, either in support of its

12  own motion or in opposition to Plaintiff's motion, to dispute that the main portion

13  of the membership service counter is over 36 inches high.  Defendant asserts only

14  that Plaintiff lacks evidence, which is insufficient to create a dispute of material fact

15  even when viewing the evidence in the light most favorable to Defendant.  *See Sharp*

16  *v. Islands Rest.-Carlsbad*, 900 F. Supp. 2d 1114, 1122 (S.D. Cal. 2012) (finding

17  defendant's conclusory statements that it "dispute[d]" counter was too high and

18  counter was "accessible" insufficient to create a dispute of material fact); *Moore v.*

19  *Millenium Acquisitions, LLC*, No. 114CV01402DADSAB, 2016 WL 8730673, at *8

20  (E.D. Cal. Mar. 4, 2016), *aff'd in part, appeal dismissed in part and remanded sub*

21  *nom. Moore v. Millennium Acquisitions, LLC*, 708 F. App'x 485 (9th Cir. 2018)

22  ("While in conclusory fashion defendants characterize these facts as 'disputed,' they

23  fail to offer any evidence rebutting plaintiff's evidence or raising any question as to

24  the measurements made by plaintiff's expert. Accordingly, there is no genuine

25  dispute as to whether defendants' gas station violated the ADAAG in this regard.").

26        Accordingly, given Plaintiff's evidence and Defendant's lack of evidence, the

27  Court finds that there is no genuine dispute of fact that the height of the membership

28  counter, excluding the lowered portion, was greater than 36 inches.

1

*ii. Service(s) Available at the Lowered Counter*

2      As discussed above, the parties do not dispute that the service counter had a

3   lowered portion or that the lowered portion complied with ADA counter height

4   requirements.  Rather, Plaintiff alleges discrimination based on a failure to provide

5   a lowered counter for membership services.

6      Specifically, Plaintiff contends the lowered counter was only available for

7   merchandise returns, and thus Defendant violated the ADAAG requirement to

8   provide "at least one type of each sales counter and service counter" at an accessible

9   height by failing to provide a lowered counter for membership services.  28 C.F.R.

10  Pt. 1191 App. B § 227.3.[1]  Defendant argues the lowered counter was available for

11  both types of service—merchandise returns and membership services.

12     During his April 2018 visit to the Store, Plaintiff observed that the lowered

13  portion of the counter was being used to serve customers making returns, evidenced

14  by a sign above the end of the counter that read "Merchandise Returns."  (Schutza

15  Decl. ¶¶ 6–7.)  Plaintiff approached the membership service counter and asked

16  whether he could be helped at the lowered counter, and an employee responded that

17  he could not be helped there.  (*Id.* ¶ 8.)  Defendant contends Plaintiff's assertion that

18  the lowered counter was used exclusively for returns has no basis other than his own

19  observations.  However, as discussed above, Plaintiff may properly rely on his own

20

---

21  [1] The 2010 ADA Standards Advisory explains that types of counters that provide
22  different services include order, pick-up, express, and returns. For example, because
    order and pick-up are different services, "[i]t would not be acceptable to provide
23  access only to the part of the counter where orders are taken when orders are picked-
24  up at a different location on the same counter. Both the order and pick-up section of
    the counter must be accessible."  Dep't of Justice, 2010 ADA Standards for
25  Accessible         Design,         Advisory         227.3         Counters,
26  https://www.ada.gov/regs2010/2010ADAStandards/2010ADAstandards.htm   (last
    visited November 5, 2020). Accordingly, here, it would not be acceptable to provide
27  access only to the part of the counter where returns are processed, when membership
28  services are handled at a different location on the same counter.  The ADAAG
    requires that there must be an accessible counter for membership services.

1    observations.  *See Strong*, 724 F.3d at 1046.

2           Defendant does not deny that the lowered portion of the counter area at issue

3    was being used for merchandise returns, but presents evidence that it could be used

4    for membership services as well.  According to Frank Salas, an Assistant General

5    Manager at the Store, "[a]ny transaction that a member is seeking to complete at the

6    Member Services Desk … can be done with the member using the lowered portion

7    of the counter at the Member Services Desk."  (Decl. of Frank Salas in Supp. of

8    Def.'s Resp. to Pl.'s Mot. ¶ 6 ("Second Salas Decl."), ECF No. 39-4.)  In contrast,

9    Plaintiff avers that on two occasions, he approached the membership service counter

10   for assistance and was told he could not be helped at the lowered counter (Schutza

11   Decl. ¶¶ 8, 11), which indicates that the lowered counter could not be used for

12   membership services.  Plaintiff further states he understood the lowered counter was

13   used for returns because there was a line of people waiting at that counter that went

14   out a door marked "Return Merchandise."  (Dep. of Scott Schutza 46:22–47:5, ECF

15   No. 36-3.)

16          Although both parties have submitted photos of the counter in question, the

17   photos do not resolve the issue before the Court.  Defendants point to a photograph

18   from Exhibit 5 to Plaintiff's deposition as evidence the counter was accessible.

19   (Def.'s Mem. of P. & A. in Supp. of Mot. at 3, ECF No. 36-1; *see* Ex. B to Def.'s

20   Mot. at 37–43, ECF No. 36-3.)  Although the photo does show the lowered portion

21   of the counter, it does not indicate for what service that portion of the counter was

22   used.  A sign reading "MEMBERSHIP" is displayed behind the counter, but the

23   photo is cropped and does not show whether the sign reading "Merchandise Returns"

24   observed by Plaintiff is also present.  Plaintiff's July 24, 2020 photographs depict a

25   sign reading "MERCHANDISE RETURNS" hanging above the side of the counter

26   featuring the lowered portion.  (Ex. 4 to Pl.'s Mot., ECF No. 37-6.)  Neither party's

27   photographs conclusively resolve the issue of which services were available at the

28   lowered counter.

1    The Court finds that a genuine dispute exists over whether the lowered counter

2    was used exclusively for merchandise returns or if it was used for both membership

3    services and merchandise returns.  This fact is material to Plaintiff's contention that

4    Defendant failed to provide an ADA-compliant counter.  *See Lammey v. Bang Ja*

5    *Kim*, No. 218CV09751SJOAGRX, 2020 WL 2082947, at *4 (C.D. Cal. Feb. 28,

6    2020) ("[T]he factual dispute about the use of the lowered counter—whether it was

7    only a sales counter, or if it also functioned as a service counter—is material to

8    Plaintiff's claim.").

9         2.  Failure to Maintain Accessible Facilities

10    Plaintiff also alleges discrimination based on Defendant's failure to maintain

11    the lowered portion of the counter.  Plaintiff argues that even if Defendant intended

12    the lowered counter to be available for membership services, it was not maintained

13    for that purpose.  Defendant contends the maintenance requirement only applies to

14    the physical condition of accessible facilities.

15    Discrimination can occur where a public accommodation fails to "maintain in

16    operable working condition" accessible features of facilities or equipment so that

17    they are readily usable by individuals with disabilities.  28 C.F.R. § 36.211(a); *see*

18    *Kohler v. Flava Enterprises, Inc.*, 826 F. Supp. 2d 1221, 1227 (S.D. Cal. 2011);

19    *Johnson v. Starbucks Corp.*, No. C 17-02454 WHA, 2019 WL 1427435, at *3 (N.D.

20    Cal. Mar. 29, 2019), *aff'd*, 818 F. App'x 657 (9th Cir. 2020) ("Section 36.211(a)

21    merely requires … that once a facility is brought into compliance with the relevant

22    accessibility standards, that accessibility must be maintained so that persons with

23    disabilities may continue to access and use the facility.").

24    It "appears reasonably clear that the focus of § 36.211 is objects blocking

25    accessible routes and malfunctioning lifts and elevators." *Williams v. Potomac*

26    *Family Dining Grp. Operating Co., LLC*, No. GJH-19-1780, 2020 WL 4207589, a

27    *10 (D. Md. July 22, 2020) (collecting California district court cases).  For example,

28    "[i]noperable elevators, locked accessible doors, or 'accessible' routes that are

1    obstructed by furniture, filing cabinets, or potted plants are neither 'accessible to'

2    nor 'usable by' individuals with disabilities." 28 C.F.R. Pt. 36, App. C.

3         Here, Plaintiff presents no evidence that the counter was not in "operable

4    working condition." Plaintiff's claim is that the counter was not maintained for use

5    by disabled individuals seeking membership assistance. But the regulation's

6    requirement is not simply to maintain an accessible feature so that it is usable—the

7    feature must be maintained in "operable working condition." 28 C.F.R. § 36.211(a).

8    There is no evidence that the lowered counter was inoperable or that it would have

9    been unusable by Plaintiff had he been permitted service there.

10        As Defendant points out, the cases relied upon by Plaintiff all concern the

11   physical obstruction or condition of an accessible feature. *See Kalani*, 81 F. Supp.

12   3d at 884–85 (addressing display baskets and items placed on counter); *Chapman v.*

13   *Pier 1 Imports (U.S.) Inc.*, 779 F.3d 1001, 1006–09 (9th Cir. 2015) (addressing aisles

14   blocked by merchandise and display racks); *Kohler*, 826 F. Supp. 2d 1227–28

15   (addressing items placed on counter). Plaintiff's cite to *Fortyune v. Am. Multi-*

16   *Cinema, Inc.*, 364 F.3d 1075 (9th Cir. 2004), is inapposite because that case involved

17   a policies, practices, and procedures violation, not a failure to maintain. Plaintiff

18   does not cite, and the Court has not found, any case involving a violation of 28 C.F.R.

19   § 36.211(a) where a public accommodation verbally denied permission to use an

20   otherwise operable feature. Section 36.211(a) appears to contemplate situations in

21   which an accessible feature deteriorates, becomes physically obstructed, is turned

22   off, or otherwise rendered physically inoperable. *See, e.g.*, *Lozano v. C.A. Martinez*

23   *Family Ltd. P'ship*, 129 F. Supp. 3d 967, 973 (S.D. Cal. 2015) (addressing faded

24   paint indicating accessible parking spots); *Kalani*, 81 F. Supp. 3d at 884–85

25   (addressing items obstructing counter); *Wagenfeld v. M15 Concert Bar & Grill,*

26   *LLC*, No. EDCV161012MWFSPX, 2017 WL 10562669, at *3–4 (C.D. Cal. May 2,

27   2017) (addressing claim that defendant removed lift serving loge seating area);

28   Dep't of Justice, Technical Assistance Manual § III–3.7000.5,

1  http://www.ada.gov/taman3.html (last visited November 6, 2020) (stating

2  "[i]noperable or 'out of service' equipment does not meet the requirements for

3  providing access to a place of public accommodation"; noting impermissible

4  activities include turning off elevator during business hours to save energy or

5  deactivating accessible automatic doors because of inclement weather).

6        Accordingly, the Court finds no triable issue of fact pertaining to Defendant's

7  alleged failure to maintain the lowered counter.

8        3.  Failure to Modify Policies, Practices, or Procedures

9        Plaintiff next asserts Defendant discriminated against him because Defendant

10  had a practice of using the lower counter for returns only and failed to modify this

11  practice to accommodate Plaintiff's request to use it.

12        A plaintiff can establish discrimination based on a place of public

13  accommodation's failure to modify "policies, practices, or procedures" where (1)

14  the defendant employed a discriminatory policy or practice, and (2) the defendant

15  failed to make a requested reasonable modification to that policy or practice that was

16  necessary to accommodate the plaintiff's disability.  *Fortyune*, 364 F.3d at 1082,

17  1086; *see* 42 U.S.C. § 12182(b)(2)(A)(ii)).  A failure to modify policies may

18  constitute discrimination even if a facility's design complies with the ADAAG.  *See*

19  *Fortyune*, 364 F.3d at 1084–85.

20        *i. Defendant's Alleged Policy*

21        In response to Plaintiff's motion, Defendant argues there is a disputed issue

22  of material fact as to the existence of a policy prohibiting the use of the lowered

23  counter.  The Court agrees.  As discussed above, Plaintiff alleges the lower counter

24  was used exclusively for returns, which Defendant disputes.  This fact, which is

25  disputed and material to Plaintiff's architectural barrier argument, is likewise

26  material to Plaintiff's policies, practices, and procedures argument.

27        Defendant asserts that "[a]ny transaction that a member is seeking to complete

28  at the Member Services Desk … can be done with the member using the lowered

1    portion of the counter at the Member Services Desk." (Second Salas Decl. ¶ 6.)

2    Defendant further submits evidence that "[t]here is no 'policy, practice, or

3    procedure' (either written or unwritten) which would require any Costco employee

4    to deny the use of the lowered portion of the counter to wheelchair users" (First Salas

5    Decl. ¶ 3; Second Salas Decl. ¶ 5),  and that "[t]ypically, anyone who expresses a

6    need to use that portion of the counter could be permitted to do so" (First Salas Decl.

7    ¶ 4).   However, this evidence is contradicted by Plaintiff's assertion that on two

8    separate occasions he was told he could not be assisted at the lowered counter.

9    (Schutza Decl. ¶¶ 8, 11.)   This dispute is material because, if other disabled

10    customers are assisted with membership services at the lowered counter consistent

11    with Defendant's claims, that would undermine Plaintiff's contention that Defendant

12    failed to modify a practice in order to accommodate him. *See Love v. O'Reilly Auto*

13    *Enterprises, LLC*, No. 19-CV-04005-CRB, 2020 WL 4464908, at *6 (N.D. Cal.

14    Aug. 3, 2020) (finding disputed issue of material fact as to whether customers were

15    regularly assisted at accessible counter).

16              *ii. Plaintiff's Request for Modification*

17              Defendant contends that it is entitled to summary judgment because even if

18    Plaintiff can establish that Defendant had a discriminatory policy, Plaintiff did not

19    request a modification of the alleged policy.

20              The evidence demonstrates Plaintiff specifically requested to be assisted at the

21    lowered counter in April 2018.  He states: "I was greeted by a female employee

22    behind the higher counter.  I asked her if it was possible for me to be helped at the

23    lowered portion of the counter and she responded that I could not be helped there."

24    (Schutza Decl. ¶ 8.)

25              Defendant states "it is undisputed that Plaintiff did not ask Costco

26    *management* for any modification" of the supposed policy, arguing "[Plaintiff] must

27    actually request a reasonable modification … of someone who can act on it." (Def.'s

28    Reply in Supp. of Mot. 8 & n.3, ECF No. 42 (emphasis added).)  But Defendant cites

1   to no authority for the proposition that a plaintiff's request for modification under

2   42 U.S.C. § 12182(b)(2)(A)(ii) need be directed to a manager.  *Cf. Muse v. Home*

3   *Depot USA, Inc.*, No. CV04-00154 DAE BMK, 2006 WL 8436438, at *6 (D. Haw.

4   Nov. 7, 2006) (finding sufficient request for modification of defendant's policy

5   where plaintiff informed sales clerk of his condition).  Nor does Defendant submit

6   evidence that a non-managerial employee would not have been able to accommodate

7   Plaintiff's request.

8           Considering both parties' evidence, the Court finds no genuine dispute of

9   material fact that Plaintiff asked to be helped at the lowered counter in April 2018.

10  Defendant is not entitled to summary judgment on this issue because Plaintiff's

11  evidence is sufficient to defeat Defendant's assertion that Plaintiff never requested

12  to use the lowered counter.  Moreover, in response to Plaintiff, Defendant does not

13  produce any "specific facts" giving rise to a genuine dispute about Plaintiff's

14  request.  *See Love*, 2020 WL 4464908, at *5 (citing *Anderson*, 477 U.S. at 256)

15  (finding mere existence of store's policy to "comply with the ADA" insufficient to

16  create dispute concerning plaintiff's allegations that he requested assistance at a

17  lowered counter and was refused).

18          *iii. Plaintiff's Communications with Costco Employees*

19          Defendant argues Plaintiff's allegations regarding his communications with

20  Costco employees are inconsistent and thus warrant denial of Plaintiff's motion for

21  summary judgment. Specifically, Defendant alleges inconsistencies between

22  Plaintiff's deposition and his responses to written interrogatories regarding whether

23  Plaintiff was provided with a clipboard and whether the Costco employee apologized

24  to him.  The Court finds these alleged inconsistencies are not material to Plaintiff's

25  claim.  Rather, Plaintiff's claim rests on the allegation that he sought assistance at

26  the membership counter and was refused the use of the lowered portion, which he

27  has repeated consistently. (*See* Dep. of Scott Schutza 34:2–35:19, 46:1–47:5, 49:16–

28  50:6; Pl.'s Am. Resps. to Interrogs. 2–3, ECF No. 39-1; Schutza Decl. ¶ 8.)

1    4.  Conclusion

2         Plaintiff alleges multiple theories of discrimination to support his ADA claim.

3    His allegations of discrimination based on architectural barriers and discrimination

4    based on a failure to modify policies, practices, and procedures hinge upon disputed

5    issues of material fact regarding Defendant's use of the lowered counter and the

6    type(s) of service available there. Accordingly, summary judgment for either party

7    on Plaintiff's ADA claim is inappropriate.[2]

8    **B. Unruh Act Claim**

9         Plaintiff's second claim for relief is based on a violation of the Unruh Act.

10   (Compl. ¶¶ 38–42). The Unruh Act provides for "full and equal accommodations,

11   advantages, facilities, privileges, or services in all business establishments" for "all

12   persons ... no matter what their ... disability." Cal. Civ. Code § 51(b). "[A] violation

13   of the ADA is, per se, a violation of the Unruh Act." *Lentini v. Cal. Ctr. for the Arts,*

14   *Escondido*, 370 F.3d 837, 847 (9th Cir. 2004); *see* Cal. Civ. Code § 51(f).  Moreover,

15   "no showing of intentional discrimination is required when the Unruh Act violation

16   is premised on an ADA violation." *Lentini*, 370 F.3d at 847.

17        Plaintiff's Unruh Act claim is derivative of his ADA claim.  Thus, because

18   genuine issues of material fact exist as to the ADA claim, as discussed above, the

19   same issues defeat summary judgment on the Unruh Act claim.

20                                    **III.**

21                                 **CONCLUSION**

22        For the foregoing reasons, the Court DENIES Defendant's motion for

23   summary judgment and DENIES Plaintiff's motion for summary judgment.

24   / / /

25

26   _____

27   [2] In response to Plaintiff's motion, Defendant additionally argues there is a question
     of fact as to whether Plaintiff diligently asserted his rights.  The Court declines to

28   address this issue in light of the triable questions of fact and denial of the cross-
     motions on Plaintiff's ADA claim.

                              – 16 –                    19-cv-00990-DMS-WVG

1        **IT IS SO ORDERED.**

2    Dated:  November 7, 2020

3                                             Hon. Dana M. Sabraw
                                              United States District Judge
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28