# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

SCOTT SCHUTZA,

    Plaintiff,

v.

COSTCO WHOLESALE CORPORATION, a Washington Corporation; and DOES 1-10,

    Defendants.

Case No. 19-cv-00990-DMS (WVG)

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Plaintiff Scott Schutza filed his Complaint in this case on May 27, 2019, against Defendant Costco Wholesale Corporation ("Defendant" or "Costco"), alleging one claim for violation of the Americans with Disabilities Act ("ADA") and one claim for violation of the California Unruh Civil Rights Act ("Unruh Act"). Plaintiff alleges Defendant discriminated against him on the basis of disability by failing to provide a lowered counter for membership services and failing to modify a policy, practice, or procedure in order to accommodate his disability.

The matter was tried to the Court on June 21, 2021. James Boyd appeared on behalf of Plaintiff, and Charles Valente and Heather Kuhn O'Toole appeared on behalf of Defendant. For the reasons set forth below, the Court finds in favor of Plaintiff on both claims.

///

# I.

# FINDINGS OF FACT

Defendant Costco operates warehouse membership clubs throughout the United States, at which it sells goods and services to its members. The parties stipulate that at all relevant times, Defendant was the owner and operator of a warehouse at 101 Town Center Parkway in Santee, California ("the Store"). (Pretrial Conference Order, ¶ 5a.) The Store is a place of public accommodation and a business establishment. (*Id.* ¶ 5b.) Plaintiff is a Costco member, and the Store is the location he frequents the most. (Schutza Trial Test. 2.) Plaintiff has a T-5 complete spinal cord injury and cannot walk; he uses a wheelchair for mobility. (Schutza Trial Test. 1–2.)

In April 2018, Plaintiff visited the Store and wanted to discuss his membership information. (Schutza Trial Test. 2.) The Store has a service counter for membership services. On the wall behind this counter is a sign which reads "MEMBERSHIP." (Pl.'s Ex. 4.) The main portion of the counter, located in front of the sign, is too high for Plaintiff to use comfortably. (Schutza Trial Test. 5, 6–7.) As the Court previously found, there is no genuine dispute that this raised counter is over 36 inches high and therefore does not comply with ADA counter height requirements. (ECF No. 45 at 8.) Attached to this counter is a lowered counter, situated perpendicular to the raised portion. (Pl.'s Ex. 8; Schutza Trial Test. 4–5.) The parties stipulate that this lowered counter complies with the ADA's requirements for counter height. Hanging above the lowered counter is a sign reading "MERCHANDISE RETURNS." (Pl.'s Ex. 8.) There are separate lines for the lowered counter and the raised counter. (Schutza Trial Test. 6; Pl.'s Ex. 6.) The entry point to the line for the lowered counter is through an external door bearing a sign that reads "MERCHANDISE RETURNS." (Schutza Trial Test. 6; Pl.'s Ex. 5.) Plaintiff approached the raised service counter and asked a Store employee if he could use the lowered counter. (Schutza Trial Test. 7.) The employee responded

"No, I am sorry, you can't." (Schutza Trial Test. 7.) Plaintiff had to use the raised counter, which he found uncomfortable and embarrassing. (Schutza Trial Test. 7.) The Court credits Plaintiff's testimony with respect to this visit in its entirety.

Although Plaintiff further testified about a September 2018 visit to the Store, the Court declines to credit Plaintiff's testimony with respect to this visit given that Plaintiff failed to discuss it in his May 12, 2020 Amended Responses to Defendant's Interrogatories.[1] (Def.'s Ex. C.)

## II.
## CONCLUSIONS OF LAW

Plaintiff alleges the following claims: (1) violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*; and (2) violation of the California Unruh Civil Rights Act, California Civil Code § 51.

As a threshold matter, Defendant challenges Plaintiff's standing to assert his claims. Defendant argues Plaintiff lacks standing to seek an injunction because his experience at the Store in April 2018 was a one-time event and is unlikely to recur. Defendants' standing argument is addressed first, followed by a discussion of each of Plaintiff's claims for relief.

**A. Standing**

Plaintiff has sufficiently established standing to seek injunctive relief in this case. "[T]o establish standing to pursue injunctive relief, which is the only relief available to private plaintiffs under the ADA, [a plaintiff] must demonstrate a 'real and immediate threat of repeated injury' in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (en banc) (citing *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004)). The "Supreme Court has instructed [courts] to take a broad view of constitutional standing in civil rights cases,

---

[1] In his Complaint, Plaintiff makes additional allegations regarding two visits to the Store in May 2019 and the Store's restrooms. However, Plaintiff indicated at trial that he is no longer pursuing claims related to those allegations.

especially where, as under the ADA, private enforcement suits 'are the primary method of obtaining compliance with the Act.' " *Doran v. 7–Eleven, Inc.*, 524 F.3d 1034, 1039 (9th Cir. 2008) (quoting *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972)). "[A]n ADA plaintiff demonstrates a sufficient likelihood of future harm to establish standing to sue for an injunction when he intends to return to a noncompliant place of public accommodation where he will likely suffer repeated injury." *Chapman*, 631 F.3d at 948.

Plaintiff has done so here. Plaintiff testified he is currently a Costco member and the Store is the location he frequents the most. For the reasons discussed below, the Store's membership services counter does not comply with ADA standards, and the Store's policy has a discriminatory effect upon customers in wheelchairs seeking membership services. Plaintiff has thus established a real and immediate threat that the injury will be repeated, which is sufficient to permit him to seek injunctive relief.

**B.     ADA Violation**

Title III of the ADA prohibits discrimination by public accommodations. 42 U.S.C. § 12182(a). To prevail on a claim for discrimination under Title III of the ADA, Plaintiff must show (1) he is disabled under the definitions provided by the ADA, (2) Defendant is "a private entity that owns, leases, or operates a place of public accommodation," and (3) Plaintiff "was denied public accommodations . . . because of [his] disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). There is no dispute that Plaintiff is disabled within the meaning of the ADA, or that Defendant owned and operated the Store, a place of public accommodation. The Court accordingly turns to the third element—whether Plaintiff suffered discrimination because of his disability.

Plaintiff alleges two theories of discrimination under the ADA: (1) the Store's membership service counter is an architectural barrier because there is no lowered portion available for membership services in violation of the ADA Accessibility Guidelines ("ADAAG"), and (2) Defendant failed to make necessary, reasonable

modifications to its policies, practices, or procedures to accommodate Plaintiff. Defendant contends (1) the lowered counter was available for membership services and is therefore not an architectural barrier, and (2) Defendant has no policy that denies Plaintiff access to the lowered counter for membership services.

    1.    <u>Architectural Barrier</u>

There is no dispute that Defendant had a lowered counter connected to the membership services counter or that the lowered counter complied with ADA counter height requirements. Rather, Plaintiff alleges that because the lowered counter was provided for merchandise returns, Defendant discriminated against him by failing to provide a lowered counter for membership services.

Discrimination "on the basis of disability includes a failure to remove architectural barriers where such removal is readily achievable." *Doran*, 524 F.3d at 1043 (quoting 42 U.S.C. § 12182); *see Hubbard v. Rite Aid Corp.*, 433 F. Supp. 2d 1150, 1158 (S.D. Cal. 2006). If a physical element of a place of public accommodation does not meet or exceed the ADAAG, codified at 36 C.F.R. Pt. 1191, it is an architectural barrier under the ADA. *See* 28 C.F.R. § 36.406(a); 28 C.F.R. Pt. 36, App. A; *Chapman*, 631 F.3d at 945. A plaintiff can establish discrimination by showing a violation of applicable accessibility standards. *See Chapman*, 631 F.3d at 945. Plaintiff contends Defendant violated the ADAAG requirement to provide "at least one type of each sales counter and service counter" at an accessible height by failing to provide a lowered counter for membership services. 28 C.F.R. Pt. 1191 App. B § 227.3.

The Court finds the lowered counter was not provided for membership services within the meaning of this section. Defendant argues the lowered counter was available for both types of service—merchandise returns and membership services—and presented evidence that it may be technically feasible for employees to assist a customer with membership services at the lowered counter. The Store's Assistant General Manager, Frank Salas, testified that any membership services

transaction can be taken care of at the lowered counter (Salas Trial Test. 10), and employee Myshell Taylor testified that she has provided membership assistance to customers in wheelchairs at the lowered counter. (Taylor Trial Test. 4–5.)

Although it may be possible to assist customers with membership services at the lowered counter, the current configuration and signage of this area of the store do not readily indicate that the lowered counter is provided for those services. The raised counter and the lowered counter have signs denoting "MEMBERSHIP" and "MERCHANDISE RETURNS," respectively, as well as separate lines for each counter. Indeed, the line for the counter marked 'returns' is partially separated by a rail and is accessed from outside the store through an external door. Mr. Salas acknowledged that the signs are there "to distinguish between merchandise returns and membership services" and that the general protocol is that customers "follow the signs." (Salas Trial Test. 19.) He further testified that if a customer rolled up to the merchandise returns line and requested membership services, the employees "are going to ask [the customer] to step over to the membership side." (Salas Trial Test. 24.) Moreover, Ms. Taylor testified that the register at the lowered counter "is designed for refunds" and that from that register, she cannot pull up a membership services screen, but needs to walk over to another screen a few feet away. (Taylor Trial Test. 5, 9–10.)

Thus, because the lowered counter has a separate line and separate signage indicating it is for 'merchandise returns,' and because it lacks the equipment necessary to be used for membership services, the Court finds it is not a 'membership services' type of counter. Its presence therefore is not sufficient to satisfy the ADAAG's requirement to provide "at least one type of each sales counter and service counter" at an accessible height.[2] 28 C.F.R. Pt. 1191 App. B § 227.3; *see*

---

[2] The 2010 ADA Standards Advisory explains that types of counters that provide different services include order, pick-up, express, and returns. For example, because order and pick-up are different services, "[i]t would not be acceptable to provide access only to the part of the counter where orders are taken when orders are picked-

*Whitaker v. Joe's Jeans, Inc.*, No. 21-CV-00597-CRB, 2021 WL 2590155, at *3 (N.D. Cal. June 24, 2021) (finding defendant failed to provide accessible sales counter because although there was a lowered portion of the counter, it lacked point-of-sale equipment). Defendant accordingly fails to provide an accessible membership services counter. The raised counter that is currently provided for membership services is too high for Plaintiff to use. Plaintiff's testimony establishes that he personally encountered this barrier in April 2018, and it precluded his full and equal access to the Store. Moreover, the Court finds that removal of this barrier would be readily achievable, either by lowering a portion of the raised counter, or reconfiguring the signage and lines to clearly indicate membership services are available at the lowered counter.

2. <u>Failure to Modify Policies, Practices, or Procedures</u>

In addition to Defendant's failure to provide an accessible membership services counter, the Court finds Plaintiff suffered discrimination based on Defendant's failure to modify a policy, practice, or procedure. A plaintiff can establish discrimination based on a public accommodation's failure to modify "policies, practices, or procedures" where (1) the defendant employed a discriminatory policy or practice, and (2) the defendant failed to make a requested reasonable modification to that policy or practice that was necessary to accommodate the plaintiff's disability. *Fortyune*, 364 F.3d at 1082, 1086; *see* 42 U.S.C. § 12182(b)(2)(A)(ii)) (discrimination includes "a failure to make reasonable

---

up at a different location on the same counter. Both the order and pick-up section of the counter must be accessible." Dep't of Justice, 2010 ADA Standards for Accessible Design, Advisory 227.3 Counters, https://www.ada.gov/regs2010/2010ADAStandards/2010ADAstandards.htm (last visited June 29, 2021). Accordingly, here, where the signage and setup indicate that returns are processed at the lowered counter and membership services are handled at a different, higher counter, it is not acceptable to provide access only to the counter designated for returns processing. The ADAAG requires that there must be an accessible counter for membership services.

modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities"). A failure to modify policies may constitute discrimination even if a facility's design complies with the ADAAG. *See Fortyune*, 364 F.3d at 1084–85.

Defendant argues it cannot be liable for any failure to modify a policy because it did not have a policy that was discriminatory, and in any event, Plaintiff never asked for a modification of any policy. As Mr. Salas explained, Defendant does not have a policy restricting the use of the lowered counter to returns. (Salas Trial Test. 9.) Nor does Defendant have a policy specifically requiring employees to assist a customer in a wheelchair at the lowered counter upon request. (Salas Trial Test. 22, 25.)[3] Rather, Mr. Salas testified that Defendant's practice is to "educate and teach our employees" to "do our best" to take care of a customer's request, and "try to find a way to say yes." (Salas Trial Test. 3, 21, 25.)

"Actionable discrimination under federal discrimination statutes can take the form of . . . 'discriminatory effects' of a failure to make reasonable modifications under 42 U.S.C. § 12182(b)(2)(A)(ii)." *Smith v. Walgreens Boots All., Inc.*, No. 20-CV-05451-CRB, 2021 WL 391308, at *7 (N.D. Cal. Feb. 3, 2021) (citing *Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 846 (9th Cir. 2004); *Crowder v.*

---

[3] Specifically, Mr. Salas testified as follows:

> **Q.** ALL RIGHT. SO THERE IS NO POLICY DIRECTING [THE STORE EMPLOYEES], EVEN IF [PLAINTIFF] REQUESTS IT, TO ACTUALLY ACCOMMODATE HIM AND BRING HIM TO MERCHANDISE RETURNS.
> **A.** THERE IS NO WRITTEN POLICY.
> **Q.** OKAY. ALL RIGHT. AND NO TRAINING POLICY THAT YOU ARE AWARE OF.
> **A.** WE EDUCATE OUR EMPLOYEES TO ASSIST OUR MEMBERS THE BEST WAY THAT THEY POSSIBLY CAN.

(Salas Trial Test. 25.)

*Kitagawa*, 81 F.3d 1480, 1486 (9th Cir. 1996)). Indeed, "facially neutral policies may constitute discrimination when they 'disproportionately' deny disabled persons access to places of public accommodation 'due to' those persons' disabilities." *Id.* (citing *Crowder*, 81 F.3d at 1483; *McGary v. City of Portland*, 386 F.3d 1259, 1266–67 (9th Cir. 2004)).

The Court finds that because Defendant's facially neutral policy or practice directing employees to 'do their best' to assist all customers gives employees broad discretion, it disproportionately denies wheelchair users access to membership services. There is no specific training, directive, or policy that if a person in a wheelchair asks to be serviced at the lowered counter, that employees must do so. (Salas Trial Test. 25–26.) Rather, because employees are simply trained to 'do their best' to assist customers, the decision whether to permit a customer in a wheelchair to be helped at the lowered counter will be at the employee's discretion. Mr. Salas testified: "I think if an individual that came up that was in a wheelchair and needed some services, we would do our best to try to help them out." (Salas Trial Test. 21.) However, he does not know what a particular employee might do in any given instance, and stated a store employee might not know what course of action is preferred when a customer in a wheelchair requests assistance. (Salas Trial Test. 21–22.) Under this broad practice, it is therefore more likely that a wheelchair user will be denied access to membership services at the lowered counter compared to a customer who does not require the use of a lowered counter, resulting in discrimination like the type suffered by Plaintiff. Indeed, Mr. Salas admitted it was possible that an employee might say "sir, I'm sorry, I can't help you at that [lowered] window" to a person in a wheelchair if the person approached the higher counter for membership services and there was a long line at the lowered counter. (Salas Trial Test. 20–21.)

The Court thus finds that Defendant's policy or practice to 'do its best' to assist customers is discriminatory with respect to providing membership services at

the lowered counter. In April 2018, Plaintiff asked to be helped with membership services at the lowered counter, effectively requesting a modification of the policy, and Defendant's employee denied his request. His requested modification would be reasonable, because as Defendant's witnesses testified, it would be possible to provide some form of membership assistance at the lowered counter.[4] Defendant failed to make a requested reasonable modification to its policy that was necessary to accommodate Plaintiff's disability. Accordingly, Defendant is liable under the ADA for a failure to modify its policy, practices, or procedures.

## C. Unruh Act Violation

The Unruh Act provides for "full and equal accommodations, advantages, facilities, privileges, or services in all business establishments" for "all persons . . . no matter what their . . . disability." Cal. Civ. Code § 51(b). "[A] violation of the ADA is, per se, a violation of the Unruh Act." *Lentini*, 370 F.3d at 847; *see* Cal. Civ. Code § 51(f). Moreover, "no showing of intentional discrimination is required when the Unruh Act violation is premised on an ADA violation." *Lentini*, 370 F.3d at 847.

Plaintiff's Unruh Act claim is wholly derivative of his ADA claim. Thus, because Plaintiff has established Defendant's liability under the ADA for his April 2018 visit to the Store, Defendant is also liable for a violation of the Unruh Act.

## D. Injunctive Relief

Based on the foregoing findings that Plaintiff has proved his claim for violation of the ADA, the Court grants Plaintiff's request for injunctive relief and orders Defendant to remove the architectural barrier of the membership services counter at the Store. Such removal would be achievable in several ways, including but not limited to either (a) lowering a portion of the counter at membership services to an accessible height or (b) reconfiguring the signage, customer lines, and

---

[4] Defendant does not raise the defense that permitting Plaintiff to be helped at the lowered counter would "fundamentally alter the nature of [its] goods, services, facilities, privileges, advantages, or accommodations." *See* 42 U.S.C. § 12812(b)(2)(ii).

equipment at the Store such that the existing lowered counter is clearly provided for membership services.

### E. Damages

Plaintiff seeks statutory damages under the Unruh Act, which provides for a civil penalty of $4,000.00 for each violation. Cal. Civ. Code § 52(a) (stating court may award up to three times the amount of actual damages, and "in no case less than four thousand dollars"). Plaintiff has established that an Unruh Act violation occurred in April 2018. Plaintiff does not claim actual damages, but rather seeks the statutory minimum of $4,000.00. (*See* Compl. ¶¶ 41–42, Prayer for Relief; Pretrial Conference Order ¶ 2.) The Court accordingly awards Plaintiff $4,000.00 in statutory damages for the April 2018 violation.

## III.

## CONCLUSION AND ORDER

Based on the foregoing findings of fact and conclusions of law, it is ordered as follows:

1. Defendant shall remove the architectural barrier in the Store's membership services area by providing a lowered, accessible counter for membership services;
2. Plaintiff shall recover $4,000.00 in damages from Defendant;
3. Plaintiff may file a separate motion for attorneys' fees and costs pursuant to Federal Rule of Civil Procedure 54(d);
4. The Clerk of Court shall enter judgment consistent with this Order.

**IT IS SO ORDERED.**

Dated: July 7, 2021

Hon. Dana M. Sabraw, Chief Judge
United States District Court