CENTER FOR DISABILITY ACCESS
Raymond Ballister Jr., Esq., SBN 111282
Russell Handy, Esq., SBN 195058
Dennis Price, Esq., SBN 279082
8033 Linda Vista Road Suite 200
San Diego CA 92111
(858) 375-7385; (888) 422-5191 fax
dennisp@potterhandy.com

Attorneys for Plaintiff SCOTT SCHUTZA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Scott Schutza**, | **Case:** 3:19-CV-00990-DMS-WVG |
| Plaintiff, | **Memorandum of Points and Authorities in Support of Motion for An Award of Attorney's Fees** |
| v. | |
| **Costco Wholesale Corporation**, a Washington Corporation; and Does 1-10, | Date:       September 10, 2021<br>Time:       1:30 p.m.<br>Ctrm:       13A (13th floor) |
| Defendants. | Hon Dana M. Sabraw |

1
2

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ...................................................................1

II.  REASONABLENESS OF FEES ..............................................................1

   A.   Hourly Rates .................................................................................. 2

   B.   Hours Reasonably Expended.................................................11

III.  Expert Testimony of Gerald Knapton **Error! Bookmark not defined.**

IV.  HENSLEY/KERR FACTORS ...............................................................15

   A.   Time and Labor Required ......................................................15

   B.   Novelty and Difficulty of Issues.........................................16

   C.   Skill Required to Perform Legal Service .............................16

   D.   Preclusion of Other Work .....................................................17

   E.   Customary Fee ..........................................................................18

   F.   Risk of non-payment................................................................18

   G.   Time Limitations ......................................................................20

   H.   Amount Involved and Results Obtained ............................20

   I.   Experience and Ability of Attorneys ...................................20

   J.   Undesirability of the Case ......................................................20

   K.   Nature and Length of Professional Relationship with Client...........20

   L.   Awards in Similar Cases. .......................................................20

V.   LITIGATION COSTS................................................................................21

VI.  CONCLUSION ..........................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*Arroyo v. Cervantes* (C.D. Cal. 2020) 8:19-cv-00182-AG-ADS .......................... 6

*Bell v. Clackamas County*, 341 F.3d 858, 869 (9th Cir. 2003) ........................... 8

*Blackwell v. Foley*,
   724 F. Supp. 2d 1068 (N.D. Cal. 2010) ......................................................... 2, 4

*Botosan v. Paul McNally Realty* (9th Cir. 2000) 216 F.3d 827 ........................... 13

*Buckhannon v. West Virginia Dept. of Health*, 532 U.S. 598 (2001) ................... 21

*Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 981 (9th Cir. 2008) ........ 8

*Cartwright v. Patel* (S.D. Cal. 2020) 3:18-CV-02191-L-BGS ............................ 7

*Casey v. City of Cabool* (8th Cir 1993). 12 F.3d 799 ........................................ 12

*Center for Biological Diversity v. County of San Bernardino*, 185 Cal.App.4th
   866, 899 (4th Dist. 2010) ....................................................................... 21, 22

*City of Sacramento v. Drew*,
   207 Cal. App. 3d 1287 (1989) ..................................................................... 2

*Copeland v. Marshall*,
   641 F.2d 880 (1980) ................................................................................ 15

*Deanda v. Sav. Inv., Inc.* (9th Cir. 2008) 267 F. App'x 675 ............................... 13

*Estrada v. Mirlan* (C.D. Cal. 2019) 5:18-cv-01892-JGB ................................. 5

*Fortyune v. American Multi-Cinema, Inc.* (9th Cir. 2004) 364 F.3d 1075 ........ 13

*Fortyune v. City of Lomita* (9th Cir. 2014) 766 F.3d 1098 ............................... 12

*Garcia v. Maywood Craft, Inc.* (C.D. Cal. 2020) 2:20-cv-01285-JFW ............... 6

*Gusman v. Unisys Corp.* (7th Cir. 1993) 986 F.2d 1146 ................................. 12

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ........................................................................passim

*Johnson v. Khalsa* (N.D. Cal. 2020) 2:19-cv-02725-SBA-AGT ........................ 7

1  *Johnson v. Rehman* (9th Cir. 2021) 19-16557 (February 26, 2021) ................... 8

2  *Karczewski v. DCH Mission Valley LLC* (9th Cir. 2017) 862 F.3d 1006 ............. 14

3  *Kish v. Amberheartclothing, Inc.* (C.D. Cal. 2019) 2:19-cv-01752-CJC-SPx ....... 6

4  *Kittok v. Leslie's Poolmart, Inc.* (C.D. Cal. 2009) 687 F. Supp. 2d 953 .............. 13

5  *Lammey v. Plaza Segundo* (C.D. Cal. 2019) 2:18-cv-04484-JAK-PLA ............... 6

6  *Langer v. Gutierrez* (CD Ca. 2019) 04963-AB-JPR ........................................... 6

7  *Langer v. Murad* (S.D. Cal. 2020) 3:20-cv-00034-MMA-BLM .......................... 7

8  *Langer v. Vargas* (S.D. Cal. 2020) 3:19-cv-01166-BAS-JLB ............................... 7

9  *Lindy Bros. Builders, Inc. of Phila. v. American Radiator*,

10    487 F.2d 161 (3rd Cir 1973) .......................................................... 15

11  *Lopez v. Getz* (C.D. Cal. 2019) 2:18-cv-02152-SJO-MRW .................................. 5

12  *Love v. Rivendell II* (N.D. Cal. 2018) 3:18-cv-03907-JST-EDL .......................... 7

13  *Lovell v. Chandler*

14    (9th Cir. 2002) 303 F.3d 1039 ..................................................... 25

15  *Lozano v., C.A. Martinez Family Ltd. Partnership*, (S.D. Cal. 2015) 129

16    F.Supp.3d 967 ............................................................................... 12

17  *Munson v. Del Taco, Inc.* (2009) 46 Cal.4th 66 ................................................... 12

18  *Nicholls v. Holiday Panay Marina, L.P.* (Cal. App. 4th 2009) 93 Cal.Rptr.3d 309

19    ....................................................................................................... 13

20  *Perdue v. Kenny A. ex rel Winn* (2010) 559 U.S. 542 ....................................... 19

21  *Pickern v. Holiday Quality Foods, Inc.* (9th Cir. 2002) 293 F.3d 1133 ............. 13

22  *Roberts v. City of Honolulu,* 938 F.3d 1020, 1024-1025 (9th Cir. 2019) ......... 17

23  *Santana v. FCA US, LLC*, 56 Cal.App.5th 334 350 (4th Dist. 2020) ............... 22

24  *Serrano v. Priest*,

25    20 Cal.3d 25 (1977) ........................................................................ 14

26  *United Steelworkers of Am. v. Phelps Dodge Corp.* (9th Cir. 1990) 896 F.2d 403 . 3

27  *Van Gerwen v. Guarantee Mutual Life*,

28    214 F.3d 1041 (9th Cir. 2000) ....................................................... 18

iii

*Wehr v. Burroughs Corp.*,

   477 F.Supp. 1012 (E.D.Pa. 1979).......................................................2

*Welch v. Metropolitan Life Ins. Co.*,

   480 F.3d 942 (9th Cir. 2007) ...........................................................3

*Whitaker v. Hieu* (C.D. Cal. 2019) 2:18-cv-10584-SVW-MRW ..........................5

*Whitaker v. Marclon LLC* (C.D. Cal. 2021) 2:19-cv-10125-PSG-AGR.............7

*Wyatt v. Liljenquist* (C.D. Cal. 2000) 96 F. Supp. 2d 1062 ...............................14

**Statutes**

42 U.S.C. § 12205 ....................................................................... 1, 25

Cal. Civ. Code § 55.56(g) .................................................................22

## I.  PRELIMINARY STATEMENT

Mr. Scott Schutza is a person with physical disabilities. He is a paraplegic who cannot walk and who uses a wheelchair for mobility.  He sued defendant Costco Wholesale Corporation, a Washington Corporation as owners and operators of 'Costco' located at or about 101 Town Center Pkwy, Santee, California, for failure to provide an accessible membership service counter although the law has required it for nearly 30 years.

On July 7, 2021, Court issued a judgment in Mr. Schutza's favor, granting him injunctive relief and monetary damages. Having prevailed, Plaintiff now moves the Court for an award of attorney's fees and costs.

## II.  REASONABLENESS OF FEES

Under the American with Disabilities Act, attorney's fees are available to a prevailing party. 42 U.S.C. § 12205.

Successful litigants are entitled to reasonable attorney fees "to ensure effective access to the judicial process for persons with civil rights grievances." *Hensley v. Eckerhart* (1983) 461 U.S. 424, 429. "If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts. Consequently, recovery is the rule rather than the exception." *Jankey v. Poop Deck* (9th Cir. 2008) 537 F.3d 1122, 1131

This is a civil right entitlement, not a windfall. "It must be remembered that an award of attorneys' fees is not a gift. It is just compensation for expenses actually incurred in vindicating a public right." *City of Sacramento v. Drew* (1989) 207 Cal. App. 3d 1287, 1304.

The "fundamental objective" of attorney fee statutes is "to encourage suits effectuating a strong policy by awarding **substantial attorney's fees** ... to those who successfully bring such suits . . .." *Woodland Hills Residents Ass'n., Inc. v. City Council, Woodland Hills Residents Ass'n., Inc. v. City Council* (1979) 23 Cal.3d 917, 933, 23 Cal.3d 917, 933.  To accomplish this, the award must be large enough "to entice competent counsel to undertake difficult public interest cases." *San Bernardino Valley Audubon Society, Inc. v. County of San Bernardino* (1984) 155 Cal.App.3d 738, 755. Thus, there is a "requirement of an award of substantial attorney fees" in these disability access civil rights cases. *Blackwell v. Foley* (N.D. Cal. 2010) 724 F. Supp. 2d 1068, 1076 (a disability access case involving both the ADA and Unruh Civil Rights Act).

The documentation submitted in support of a request for attorney fees should be sufficient to satisfy the court, or indeed a client, that the hours expended were actual, non-duplicative and reasonable and to appraise the court of the nature of the activity and the claim on which the hours were spent. *See Hensley*, 461 U.S. at 437; *Wehr v. Burroughs Corp.* (E.D.Pa. 1979) 477 F.Supp. 1012, 1016–18, *modified on other grounds* at *Wehr v. Burroughs Corp.* (3rd Cir. 1980) 619 F.2d 276. The billing statements attached as exhibit 2 meet this standard.

### A.    Hourly Rates

A reasonable hourly rate reflects the skill and experience of the lawyer, including any relevant areas of particular expertise, and the nature of the work performed. *See Hensley*, 461 U.S. at 433-34. The reasonable market value of the attorney's services is the measure of a reasonable hourly rate. *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th

1084, 1094. This standard applies regardless of whether the attorneys claiming fees charge nothing for their services, charge at below-market or discounted rates, represented the client on a straight contingent fee basis, or are in house counsel. *Id.*; *see also Welch v. Metropolitan Life Ins. Co.* (9th Cir. 2007) 480 F.3d 942, 946. As evidenced by the detailed background of each attorney, the attorneys in this matter are skilled in their practice and qualified to command rates between $400-$650 per hour. (Exhibit 1 - Price Decl. ¶ 9-19.)

As explained below, these or similar rates have been awarded by numerous courts within this district since mid-2019. Rates awarded to the claiming attorneys in previous actions are good evidence of the appropriate market rate. *See e.g. Margolin v. Regional Planning Comm'n* (1982) 134 Cal.App.3d 999, 1005. Also, in *United Steelworkers of Am. v. Phelps Dodge Corp.* (9th Cir. 1990) 896 F.2d 403, 407, the court held, "rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate."). In *Hansen v. Deercreek Plaza, LLC* (S.D.Fla 2006) 420 F.Supp.2d 1346, 1350, the court held that previous fee rulings for the fee applicant for comparable cases are "satisfactory evidence" in an ADA case.

Not only are plaintiff's counsel's rates fully consistent within their market but they should expect to receive full compensation. The rates requested herein have been approved by this district and are in line with market rates. Both state and federal law advocates for full and substantial compensation for disability civil rights attorneys:

> Per statutory provisions by the United States Congress and
> the California Legislature to ensure that there are attorneys
> willing to perform the important function of securing the

rights of disabled persons to "full participation in the social and economic life of the state" and to "full and equal access," it is necessary to provide substantial compensation for this work. Encouraging competent attorneys to handle ADA Title III cases is necessary for effective enforcement: former California Attorney General Dan Lungren, in a 1993 Opinion, held that California building officials could not independently enforce the ADA, and that enforcement was left primarily to private lawsuits.

*Blackwell v. Foley* (N.D. Cal. 2010) 724 F. Supp. 2d 1068, 1075.

"Indeed, were it not for the efforts of those attorneys willing to undertake the representation of ADA plaintiffs, there would be little, if any, enforcement of this landmark statute." *Hansen v. Deercreek Plaza, LLC* (S.D.Fla. 2006) 420 F.Supp.2d 1346, 1349. Based on the evidence of market rate and the public interest in encouraging the private bar in enforcing the ADA, plaintiff's counsels' rates should be approved by this court.

1.      *Rates of Billing Attorneys*

Since 2019, courts in Southern California have fairly consistently awarded rates between $400-$595 per hour to CDA attorneys. *Lindsay v. Grupo Glemka* (C.D. Cal. 2019) 2:18-cv-05136-MRW (Docket #40) (ADA matter in which Judge Wilner awarded rates up to $595); *Fernandez v. Salgado* (C.D. Cal. 2019) 2:19-cv-01817-SK (Docket #36) (ADA matter in which Judge Salgado awarded rates up to $595); *Whitaker v. Hieu* (C.D. Cal. 2019) 2:18-cv-10584-SVW-MRW (Docket

#36) (ADA matter in which Judge Wilson awarded rates up to $595); *Estrada v. Mirlan* (C.D. Cal. 2019) 5:18-cv-01892-JGB (Docket #59) (ADA matter in which Judge Bernal awarded rates up to $595); *Lopez v. Getz* (C.D. Cal. 2019) 2:18-cv-02152-SJO-MRW (Docket #33) (ADA matter in which Judge Otero awarded rates up to $595); *Garibay v. Shen* (C.D. Cal. 2019) 2:18-cv-09719-RGK-E (Docket #44) (ADA matter in which Judge Klausner awarded rates up to $595); *Langer v. Gutierrez* (C.D. Cal. 2019) 04963-AB-JPR (Docket #24) (ADA matter in which Judge Birotte awarded rates up to $595); *Kish v. Amberheartclothing, Inc.* (C.D. Cal. 2019) 2:19-cv-01752-CJC-SPx (Docket #18) (ADA matter in which Judge Carney awarded rates up to $595); *Lammey v. Plaza Segundo* (C.D. Cal. 2019) 2:18-cv-04484-JAK-PLA (Docket #20) (ADA matter in which Judge Kronstadt awarded rates up to $595)*; Fernandez v. Brothers Auto Repair* (C.D. Cal. 2019) 2-19-cv-05194-DSF-JEM (Docket #18) (ADA matter in which Judge Fischer awarded rates up to $595); *Arroyo v. Cervantes* (C.D. Cal. 2020) 8:19-cv-00182-AG-ADS (J. Selna presiding) (Docket #40) (ADA matter in which Judge Selna awarded rates up to $595 in a matter presided over by Judge Guilford); *Whitaker v. Mejia* (C.D. Cal. 2020) 2:19-cv-08744-PSG (Docket #26) (ADA matter in which Judge Gutierrez awarded rates up to $595); *Garcia v. Maywood Craft, Inc.* (C.D. Cal. 2020) 2:20-cv-01285-JFW (Docket #18-3; #20) (ADA matter in which Judge Walter awarded rates up to $595); *Whitaker v. Marclon LLC* (C.D. Cal. 2021) 2:19-cv-10125-PSG-AGR (Docket #39) (ADA claim in which Judge Gutierrez awarded $525 to Mr. Handy, and $350-$400 for other counsel).

In addition to the Los Angeles area, these rates have been awarded in all other Federal Districts in California; *Langer v. Vargas* (S.D. Cal. 2020) 3:19-cv-01166-BAS-JLB (Docket #19) (San Diego based ADA

matter awarding similar rates to those requested here); *Langer v. Murad* (S.D. Cal. 2020) 3:20-cv-00034-MMA-BLM (Docket #15) (San Diego based ADA matter awarding similar rates to those requested here); *Cartwright v. Patel* (S.D. Cal. 2020) 3:18-CV-02191-L-BGS (Docket #30) (San Diego based ADA matter awarding similar rates to those requested here); *Johnson v. Khalsa* (N.D. Cal. 2020) 2:19-cv-02725-SBA-AGT (Docket #26) (San Jose based ADA matter awarding rates in excess of those requested here); *Love v. Rivendell II* (N.D. Cal. 2018) 3:18-cv-03907-JST-EDL (Docket #25) (San Franciso area based ADA matter awarding rates in excess of those requested here); *Johnson v. Vintage* (E.D. Cal. 2020) 2:17-cv-02560-MCE-CKD (Docket #31) (Sacramento area based ADA matter awarding rates similar to those requested here). Similarly, then an associate, Mr. Price had his rates assessed by the Ninth Circuit at $450/hr. *Johnson v. Rehman* (9th Cir. 2021) 19-16557 (February 26, 2021) (Exhibit 4 – Rehman fee order.)

In the Ninth Circuit, rates older than two years are considered "stale." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 981 (9th Cir. 2008); *Bell v. Clackamas County*, 341 F.3d 858, 869 (9th Cir. 2003). The rates above all stem from cases and authorities that predate that two year period of exclusion, and while they may still have persuasive effect, a current assessment is necessary.

As of 2021, billing at CDA is generally based on the following:

| Title | Experience | Hourly Billing |
|---|---|---|
| Senior Partner | Varies (20+) | $650 |
| Partner / Of Counsel | Varies[1] | $550-$600 DOE |
| Supervising Attorney | Varies | $500 |
| Associate III | 6+ | $450-$500 DOE |
| Associate II | 3-5 years | $400 |
| Associate I | 1-2 years | $350 |
| Paralegal | | $100-$200[2] |

CDA regularly reviews prevailing rate data from multiple sources and modifies its rates in line with that data. The above rates are supported by the most recent Real Rate Report. (Exhibit 3, pgs 47-51 Excerpts from 2020 Mid-Year Real Rate Report). Senior Partners of over 20 years experience are billed at $650 per hour, while the RRR median for Los Angeles partners is $731. (Exhibit 3, pg 47-51). Junior partners are billed at lower rates, despite the RRR supporting a rate of $650 per hour. *Id.*

This continues for attorneys of lesser experience as well. Associates are billed between $350-$500 per hour. RRR demonstrates that first quartile associates command a rate of $350 per hour, while the median supports $535. (*Id.*). Even experienced associates, handling the most complicated work, are only billed up to $500.

---

[1] This category varies wildly depending on experience.

[2] With the exception of one senior paralegal, CDA generally bills all paralegals as the same baseline rate of $100 regardless of experience.

1    The increase on the 2019 rates is in line with current Real Rate
2    Report data and justified due to increased litigation and labor costs, as
3    well as modifications due to experience and promotion of billing
4    attorneys.

5    As demonstrated above, the CDA rate structure is commonly
6    awarded and the experience detailed in Exhibit 1 and the decisions
7    awarding these rates are instructive on the prevailing rates in the
8    community.

9

10   1.    *Current Rates in the Community*

     Not only are the rates well supported by decisions awarding them
11   to CDA, but the rates are consistent with or lower than similar rates
12   awarded to attorneys in the same community. As shown in the table
13   below,[3] other attorneys have recently been awarded rates far in excess of
14   those rates requested in the present motion.

15

16

17

18

19

20

21
_____

22   [3] *Soler v. County of San Diego,* 2021 WL 2515236, *10 (S.D. Cal. June 18,
23        2021); *Kries v. City of San Diego*, 2021 WL 120830, *8 (S.D. Cal.
          January 13, 2021) *Owaidah v. Mazzei* (C.D. Cal. 2020) 2020  WL
24        2405277, *3; *Shaw v. Ford Motor Company* (C.D. Cal. 2020) 2020
25        WL 57273; *Kajeet, Inc. v. Qustodio, LLC* (C.D. Cal. 2020) 2019 WL
26        8060823, *1-2; *Green v. Monrovia Nursery Company* (C.D. Cal.
27        2020) 2020 WL 861807, *4.

28

| Case | Attorney | Exp. | Rate |
|------|----------|------|------|
| *Solar v. County of San Diego* | Todd Burns | 25 | $650 |
| *Solar v. County of San Diego* | Gabriel Cohan | 9 | $485 |
| *Kries v. City of San Diego* | Michael Conger | 30 | $650 |
| *Kries v. City of San Diego* | Eli Naduris-Weinstein | 6 | $400 |
| *Owaidah v. Mazzei* | Dana Rosenberg | 12 | $525 |
| *Shaw v. Ford Motor* | Steve Mikhov | 10+ | $550 |
| *Kajeet, Inc. v. Qustodio, LLC* | Salil Bali | 10+ | $600 |
| *Green v. Monrovia Nursery* | David Dillard | 35 | $713 |
| *Grant & Eisenhofer v. Brown* | "Associates" | N/A | $500 |
| *Stiavetti v. Ahlin* | Several | 5+ | $700[4] |
| *Stiavetti v. Ahlin* | Several | 2-5 | $450 |
| *Robles v. Emp. Dev. Dept.* | Gary Garfinkle | 20+ | $825 |

The above cases are comparable involving similar skills as those required for ADA litigation. The rates sought by CDA are lower than the typical rates awarded and as a result should be deemed reasonable within the community.

---

[4] The *Stiavetti* court calculated a blended rate based on the percentage of time billed at each rate. The final calculation stems from awarding $700 for the most experienced counsel and $450 for counsel with 2-5 years of experience and $300 for newly barred attorneys.

2.      *Counsel is Deserving of Market Competitive Rates*

The value of attorney time is the opportunity cost of that lawyer's time. *Gusman v. Unisys Corp.* (7th Cir. 1993) 986 F.2d 1146, 1149. "Any other rule would relegate civil rights enforcement (and the law that results) to those lawyers with below-market billing rates. A refusal to pay for experience and expertise will exact a cost in the form of inexperience and, perhaps, incompetence." *Casey v. City of Cabool* (8th Cir 1993). 12 F.3d 799, 805.

The rates requested by and previously awarded to counsel in this matter are within the ranges being awarded by courts in this community to other firms for civil rights litigation and matters similar in character to the ADA. While many cases are simple and efficiently resolved, the CDA does significant work and has shaped ADA law with numerous, precedent setting opinions. *Lozano v., C.A. Martinez Family Ltd. Partnership*, (S.D. Cal. 2015) 129 F.Supp.3d 967 (voluntary removal of barriers did not cause mootness where business failed to maintain accessible parking spaces); *Fortyune v. City of Lomita* (9th Cir. 2014) 766 F.3d 1098 (establishing right to accessible on-street parking); *Munson v. Del Taco, Inc.* (2009) 46 Cal.4th 66 (establishing that a violation of the ADA does not require intent to qualify for damages under Unruh); *Nicholls v. Holiday Panay Marina, L.P.* (Cal. App. 4th 2009) 93 Cal.Rptr.3d 309 (marina is a covered place of public accommodation under the ADA); *Kittok v. Leslie's Poolmart, Inc.* (C.D. Cal. 2009) 687 F. Supp. 2d 953 (disabled patron not required to park in inaccessible spaces that are available to prevail under the ADA); *Deanda v. Sav. Inv., Inc.* (9th Cir. 2008) 267 F. App'x 675, 676 (no prefiling notice required to maintain claim under the ADA); *Miller v. California Speedway Corp.* (9th Cir. 2008) 536 F.3d 1020 (accessible seating requires patron to be able to actually

see the presentation over other spectators); *Fortyune v. American Multi-Cinema, Inc.* (9th Cir. 2004) 364 F.3d 1075 (establishing that a movie theatre is required to enforce its accessible seating policies in order to provide equal access to disabled patrons); *Pickern v. Holiday Quality Foods, Inc.* (9th Cir. 2002) 293 F.3d 1133 (patron not required to engage in futile gestures to maintain standing under the ADA); *Botosan v. Paul McNally Realty* (9th Cir. 2000) 216 F.3d 827 (finding that a landlord may not contract away liability under the ADA); *Wyatt v. Liljenquist* (C.D. Cal. 2000) 96 F. Supp. 2d 1062 (exhaustion of remedies not required under the ADA); *Karczewski v. DCH Mission Valley LLC* (9th Cir. 2017) 862 F.3d 1006 (Plaintiff wishing to test drive vehicles using hand controls was able to proceed to trial on his claims.)

As demonstrated above, the firm has never shied away from trying cases on their merits and insisting on full compliance from defendants, and has a strong record of success over twenty years both at summary judgment and trial. As a result, there is a plethora of rulings on fee awards to draw from. Plaintiff asks that this court award rates requested.

## B.   Hours Reasonably Expended

As the first step in the calculation of an equitable award, the Court should determine the number of hours reasonably expended in this litigation: The starting point of every fee award, once it is recognized that the court's role in equity is to provide just compensation for the attorneys, must be a calculation of the attorneys' services in terms of the time he has expended on the case. Anchoring the analysis to this concept is the only approach that can claim objectivity, a claim which is 'obviously vital' to the prestige of the bar and the courts." *Serrano v. Priest* (1977) 20 Cal.3d

1  25, 49 *citing Lindy Bros. Builders, Inc. of Phila. v. American Radiator* (3rd
2  Cir 1973). 487 F.2d 161.

3     Furthermore, only hours found to have been reasonably expended
4  may be allowed. Plaintiff is not entitled to an award of attorney's fees for
5  hours which were duplicative, unproductive, excessive or otherwise
6  unnecessary. *Hensley*, 461 U.S. at 434. A fee applicant must exercise
7  "billing judgment" in the preparation of the attorney's fee application;
8  '[h]ours not properly billed to one's client are not properly billed to one's
9  adversary pursuant to statutory authority". *Copeland v. Marshall* (1980)
10  641 F.2d 880, 891 (en banc) (emphasis in original), *quoted* in *Hensley*,
11  461 U.S. at 484. A fair award is the product of reasonable hours and
12  reasonable rates and represents an objective basis for an initial
13  determination of attorney's fees.

14     Plaintiff's firm has created an innovative staffing approach in
15  which each attorney is assigned discrete tasks and able to become
16  experienced in narrow aspects of litigation in a short period of time. Ex. 1
17  - Decl. of Dennis Price ¶ 7. While the overall number of attorneys that
18  play a role in the development of one of our ADA cases might be higher
19  than that seen in other firms, the total hours spent in litigation, and the
20  total costs, are lower than other staffing strategies. *Id.* ¶ 8. Each attorney
21  is able to focus on a particular task at a gain of both efficiency and
22  effectiveness as a result of that specialization. *Id.* To the extent any
23  duplication of efforts occurs as a result of this staffing method, counsel
24  has exercised billing judgment and those billing entries have not been
25  included in the amount sought for compensation, as anticipated by
26  *Hensley. Id.* ¶ 2. At no time is an attorney billed for reviewing the work of
27  another, or familiarizing themselves with a file. *Id.* While courts have
28  justified reductions in hours where multiple attorneys worked on the

*same task* without justification, the number of attorneys staffing a *case* alone is not a proper basis for reduction, especially here where the billing statement has been carefully culled of any entries that may be associated with any inefficiencies that may result from this staffing decision.

As is clear from the billing statement, there has been no overbilling in this case and Plaintiff has attempted to specialize all hours spent to reduce the total number of hours involved in the matter.

While the billing method described above has demonstrable benefits given the relatively small number of hours incurred in this matter over multiple years of litigation, the *Hensley* test requires exercising billing judgment in all records submitted to the court. As detailed in the Declaration of Dennis Price, Plaintiff's counsel has done so here. While the firm experienced labor turnover during the pendency of the case, and though many of the omitted tasks were unquestionably reasonably incurred, the firm has elected to deduct all time related to the work of Phyl Grace, Ariel Vento, Ray Ballister and Elliott Montgomery. While each attorney is qualified and there is no reason to doubt the efficacy of their work in an given task, this is done in an effort to ameliorate any potential inefficiencies that might have occurred in the "hand-off" of tasks to new associates.  This amount to a deduction of nearly $10,000 in billed tasks, or nearly 20% of the value of tracked time.

All of the hours submitted to the court in the accompanying declaration of Dennis Price and the attached billing were reasonably incurred in the prosecution of this case. Each discrete task should be viewed with reference to the amount of time spent doing it and assessing if that task was reasonably incurred and if that task was accomplished in a

1   reasonable amount of time without second guessing if a different billing

2   amount would have occurred from a different staffing decision.

3

4   **III.  EXPERT TESTIMONY OF GERALD KNAPTON**

5       It has been quite some time since CDA was party to a contested fee

6   motion in the Southern District of California. As such, the firm hired an

7   expert to prepare a fee declaration in support of the current rates being

8   awarded, as there were no contested rates that the firm had been

9   involved in that met the two-year requirement in the Ninth Circuit for

10  considering current prevailing rates.

11      Rather than rely solely on prior awards, as discouraged by *Roberts v.*

12  *City of Honolulu,* 938 F.3d 1020, 1024-1025 (9th Cir. 2019), counsel

13  engaged a well-regarded expert, Gerald Knapton to opine on the current

14  reasonableness of the rates sought by counsel. Mr. Knapton is a leader in

15  the field of fee disputes and has opined as an expert in all character of

16  cases, both in favor of prevailing parties, as well against, in dozens of

17  cases. He familiarized himself with the case in this matter and opined

18  that the rates sought are reasonable based on his personal experience as

19  well as his specialized experience in reviewing the Real Rate Report. He

20  similarly stated that the efficiency with which that case was litigated was

21  virtually unparalleled.

22      Mr. Knapton is a neutral observer on the case who can be trusted to

23  give an even-handed assessment of reasonableness and has submitted a

24

25

26

27

28

1    sworn statement as to the reasonableness of all work done through July

2    23, 2021.[5]

3

4                    ## IV.   HENSLEY/KERR FACTORS

5          In *Hensley v. Eckerhart*, (1983) 461 U.S. 424, the Supreme Court

6    stated that the lodestar is the "presumptively reasonable fee amount,"

7    however adjustment should e made where the lodestar doesn't reflect the

8    litigation risks. *Id.* at 433; *Van Gerwen v. Guarantee Mutual Life*, 214 F.3d

9    1041, 1045 (9th Cir. 2000); *see also Welch*, 480 F.3d at 946. The *Hensley*

10   court adopted the Ninth Circuit *Kerr* factors that a Court may consider

11   when determining the appropriate fee award or any departure from it.

12   Many of the factors are already subsumed into the lodestar discussion but

13   plaintiff will briefly discuss each factor.

14         Given the peculiar case of ADA litigation prevailing party status,

15   and the obstreperous way in which Defendant chose to litigate this

16   matter, Plaintiff seeks a 50% modification in the lodestar based on

17   litigation risk as detailed below.

18
19         ## A.    Time and Labor Required

20         As stated above, the plaintiff showed billing judgment and

21   restraint, with demonstrated attempts to resolve this case without

22   extended litigation. Though Plaintiff attempted to resolve this matter via

23   settlement, Defendants rejected all attempts to settle throughout

24   litigation.

25   _____

26   [5] He necessarily could not opine on the work spent on the present motion,

27         as he had to be retained prior to the drafting of the motion and had

28         to prepare a declaration in advance of its drafting.

Plaintiff seeks no multiplier as the time expended will be compensated by the lodestar.

## B.  Novelty and Difficulty of Issues

Counsel seeks rates within the median or lower of the district though the Americans with Disabilities Act itself and its interaction with California State Law is ever evolving and involves new issues and new challenges on a constant basis. Aside from the fairly novel area of Americans with Disabilities Act work in general, this case presented no significant legal issues of first impression and plaintiff seeks no multiplier based on this issue.

Courts have found that issues of novelty and difficulty are typical subsumed into the lodestar, as more complex cases require more hours and are appropriately compensated accordingly. *Perdue v. Kenny A. ex rel Winn* (2010) 559 U.S. 542, 553.

## C.  Skill Required to Perform Legal Service

The Americans with Disabilities Act was passed in 1990 and the Unruh Civil Rights Act was amended in 1992 to incorporate the ADA. There are only a handful of attorneys with expertise in the area. Access under Title III of the Americans with Disabilities Act is predicated upon requirements to provide access to existing public accommodations, new construction and alterations to existing buildings. Those requirements in existing public accommodations turn on whether the removal of architectural barriers is "readily achievable."  In turn, there is a plethora of federal regulations, Department of Justice advisory opinions, interpretive manuals and case law that is argued by both plaintiffs and defendants as to what constitutes architectural barriers and the extent of the remedial measures necessary, if any, to remove the architectural

barrier. Furthermore, there is the overlaying application of Title 24 of the California Code of Regulations requirements to public accommodations which were constructed or altered after 1982, and the American National Standards Institute (ANSI) between 1970 and 1982.

A successful prosecution of disability access cases is dependent upon a plaintiff's attorney having a thorough knowledge of the ADA and all its implementing regulations, Americans With Disabilities Act Accessibility Guidelines, Title 24 of the California Code of Regulations, ANSI standards, and the relevant sections for the California Health and Safety Code, the California Civil Code, and the California Government Code. In addition, an intimacy with the body of case law which has developed around the ADA (among which over two dozen published decisions were handled by plaintiff's counsel's office) and state statutory schemes, and the ability to couple this knowledge with a practical, strategic approach to interfacing with defendants, their own personal counsel, insurance defense attorneys, insurance carriers and the Court is absolutely essential.

In short, handling disability access cases demand the services of an attorney trained and specializing in the area of law.  This case did not present specialized or skillful challenges and was a fairly straight-forward application of the law.  No modified of the lodestar is requested.

### D.    Preclusion of Other Work

While the case was litigated efficiently and quickly, the time spent could not be used, simultaneously, for other cases or other clients.  Thus, the work on this case precluded other work that could have and would have been done and billed for. Nonetheless, the lodestar fully compensates for that work.

### E.      Customary Fee

As covered above, the rates and fees charged by plaintiff's counsel are market rates.

### F.      Risk of non-payment

"[T]he purpose of a fee enhancement is primarily to compensate the attorney for the prevailing party at a rate reflecting the risk of nonpayment in contingency cases as a class." *Ketchum v. Moses*, 24 Cal.4th 1122, 1138 (2001). The unadorned lodestar reflects only the general local hourly rate for *fee-bearing* cases. It does not include compensation for contingent risk or non-payment. *Center for Biological Diversity v. County of San Bernardino*, 185 Cal.App.4th 866, 899 (4th Dist. 2010)

As is the case with virtually all civil rights cases, the fees in this case were contingent upon prevailing. Had the plaintiff not prevailed, plaintiff's attorneys would not be able to recover monies to compensate them for the outlay of time spent in prosecuting this case.  In many cases, the risk of filing a losing case is reflected in the lodestar where assessing the merits of the case is part and parcel of the risk assessment in taking a case. However, the ADA is peculiar in the realm of civil rights in that attorney's fees have been guaranteed to prevailing plaintiffs by Congress, however the typical course of litigation often results in destruction of the court's jurisdiction as defendants attempt to remove the barriers before a judgment can be entered against them. This is, to be clear, an admirable result that creates a more accessible community, faster. However, the end result, as interpreted by the Supreme Court, is that a plaintiff can bring a righteous case, and obtain all relief he was entitled to by "voluntary cessation" but often may not recover his fees. *Buckhannon v.*

1    *West Virginia Dept. of Health*, 532 U.S. 598 (2001)(eliminating catalyst
2    theory as a basis for a fee award in ADA litigation.)

3        In *Buckhannon,* the court reasoned that in cases alleging damages,
4    this result could not occur. *Id.* at 609. In California, ADA litigation was
5    not typically exposed to this sort of result. However, federal courts have
6    recent begun refusing to exercise jurisdiction over state law damages
7    claims predicated on ADA violations, as occurred in this case. As a result,
8    savvy defense counsel have engaged in cynical litigation tactics in which
9    barriers are not removed until lawsuits are filed, and then litigation is
10   drawn out, enriching the defense attorneys, with barriers only being fixed
11   just before the point of judgment. This puts these cases much higher in
12   risk than other fee shifting litigation and as a result a lodestar modifier is
13   justified. This is extremely common within this District, and as detailed
14   in the Knapton Declaration, justifies a multiplier. (Knapton Declaration ¶
15   44-47)

16       This is particularly warranted here, as this tactic was attempted in
17   this matter, it simply failed. Had defendants been successful in mooting
18   plaintiff's claim for injunctive relief on the basis that Costco had
19   accessible counters but Schutza simply failed to sufficiently demand use
20   of them, or on the basis of a superseding policy eliminating the
21   discriminatory behavior, plaintiff would have lost everything rather than
22   being entitled to the present motion.

23       A modifier of 50% is in line with the fee multipliers typically
24   awarded in litigation where entitlement to compensation is put at risk.
25   *Center for Biological Diversity v. County of San Bernardino*, 185
26   Cal.App.4th 866, 901 (4th Dist. 2010) (upholding 1.5x multiplier on
27   contingency fee matter); *Santana v. FCA US, LLC*, 56 Cal.App.5th 334
28   350 (4th Dist. 2020) (upholding 2.0 multiplier in contingency case).

### G.     Time Limitations

Except those present due to the pandemic, there were no unique time limitations imposed by either the client or the circumstances.

### H.     Amount Involved and Results Obtained

Under the Americans with Disabilities Act, there are no damages available. The only remedy is injunctive relief. The Plaintiff obtained the remedies he was entitled to under causes of action upon which the court exercised jurisdiction. By any measure, he prevailed.

### I.     Experience and Ability of Attorneys

See discussion under "Hourly Rates" above.

### J.     Undesirability of the Case

This case, like many small dollar civil rights cases, is low on the desirability scale. The clientele is largely very low income or indigent. Payment is completely dependent upon winning. It is usually big business and insurance companies on the other side. Here, Costco has a history of aggressively litigating ADA compliance claims ensuring that only a firm capable of handling that style of litigation could manage the matter.

### K.     Nature and Length of Professional Relationship with Client

The Center for Disability Access has no relationship with Mr. Scott Schutza other than representing him in his ADA/Unruh claims.

### L.     Awards in Similar Cases.

The rates sought in this rate are similar or lower to those awarded in similar litigation. The hours spent are substantially lower than typical for a case taken through trial as detailed by Mr. Knapton.

## V.   LITIGATION COSTS

The plaintiff seeks $1,189.17 in pre-trial costs. The plaintiff includes traditional costs such as the service cost ($30.00) and the filing fee ($400.00) as well as the litigation expenses that include one investigation ($200.00). Plaintiff also paid Veritext ($477.30) for deposition transcript and paid Fedex for Trial document printing and shipment ($81.87).

Following trial, counsel hired Mr. Knapton to opine on the present a declaration on the present fee motion. He billed 16.9 hours at a rate of $860 per hour for a total of $14,534.

Section 505 of the Americans with Disabilities Act (42 U.S.C. § 12205) authorizes reasonable attorney's fees, including "litigation expenses and costs," in any action brought under the Act. This includes all costs normally associated with litigation including investigative costs:

> According to committee reports, Congress included the term "litigation expenses" in order to authorize a court to shift costs such as expert witness fees, travel expenses, and the preparation of exhibits. See H.R. Rpt. No. 101-485(III) at 73, reprinted in 1990 U.S.C.C.A.N. 445, 496 (Report of the Committee on the Judiciary) ("Litigation expenses include the costs of expert witnesses. This provision explicitly incorporates the phrase 'including litigation expenses' to respond to rulings of the Supreme Court that items such as expert witness fees, travel expenses, etc., be explicitly included if intended to be covered under an attorney's fee provision."); H.R. Rpt. No. 101-485(II) at

140, reprinted in 1990 U.S.C.C.A.N. 303, 423 (Report of the Committee on Education and Labor) ("Litigation expenses include the costs of experts and the preparation of exhibits.").

*Lovell v. Chandler* (9th Cir. 2002) 303 F.3d 1039, 1058.

"The federal statute, unlike the state statutes, explicitly provides for not only attorney's fees but also litigation expenses and costs." *Saldana-Neily v. Taco Bell of Am., Inc.* (N.D. Cal. 2008) 2008 WL 793872, *3.

## VI.  CONCLUSION

The plaintiff respectfully requests that his motion be granted and he be awarded $59,977.50 in attorneys' fees ($39,985.00 with a 1.5x lodestar multiplier as described above), and $15,723.17 in costs, for a total of $75,700.67.

This billing does not include any time that may be spent reviewing an opposition, preparing a reply or oral argument. An amended time statement will be served at the time of the hearing if necessary.

Dated: July 26, 2021               CENTER FOR DISABILITY ACCESS


                                   By: __/s/ Dennis Price_____
                                      Dennis Price, Esq.
                                      Attorneys for Plaintiff